LITTLE, Receiver, *v.* HACKETT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

Submitted November 11, 1885.—Decided January 4, 1886.

A person who hires a public hack and gives the driver directions as to the place to which he wishes to be conveyed, but exercises no other control over the conduct of the driver, is not responsible for his acts or negligence, or prevented from recovering against a railroad company for injuries suffered from a collision of its train with the hack, caused by the negligence of both the managers of the train and of the driver.

*Thorogood* v. *Bryan*, 8 C. B. 115, disapproved.

On the 28th of June, 1879, the plaintiff below, defendant in error here, was injured by the collision of a train of the Central Railroad Company of New Jersey with the carriage in which he was riding; and this action was brought to recover

damages for the injury. The railroad was at the time operated by a receiver of the company appointed by order of the court of chancery of New Jersey. In consequence of his death the defendant was appointed by the court his successor, and subjected to his liabilities; and this action was prosecuted by its permission.

It appears from the record that on the day mentioned the plaintiff went on an excursion from Germantown in Pennsylvania to Long Branch in New Jersey with an association of which he was a member. Whilst there he dined at the West End Hotel, and after dinner hired a public hackney-coach from a stand near the hotel, and taking a companion with him, was driven along the beach to the pier where a steamboat was landing its passengers, and thence to the railroad station at the West End. On arriving there he found he had time before the train left to take a further drive, and directed the driver to go through Hoey's Park, which was near by. The driver thereupon turned the horses to go to the park, and in crossing the railroad track near the station for that purpose, the carriage was struck by the engine of a passing train, and the plaintiff received the injury complained of. The carriage belonged to a livery-stable keeper and was driven by a person in his employ. It was an open carriage, with the seat of the driver about two feet above that of the persons riding. The evidence tended to show that the accident was the result of the concurring negligence of the managers of the train and of the driver of the carriage—of the managers of the train in not giving the usual signals of its approach by ringing a bell and blowing a whistle, and in not having a flagman on duty; and of the driver of the carriage in turning the horses upon the track without proper precautions to ascertain whether the train was coming. The defence was contributory negligence in driving on the track, the defendant contending that the driver was thereby negligent, and that his negligence was to be imputed to the plaintiff. The court left the question of the negligence of the parties in charge of the train and of the driver of the carriage to the jury, and no exception was taken to its instructions on this head. But with reference to the alleged

imputed negligence of the plaintiff, assuming that the driver was negligent, the court instructed them that unless the plaintiff interfered with the driver and controlled the manner of his driving, his negligence could not be imputed to the plaintiff.

"I charge you," said the presiding judge to them, "that where a person hires a public hack or carriage, which at the time is in the care of the driver, for the purpose of temporary conveyance, and gives directions to the driver as to the place or places to which he desires to be conveyed, and gives no special directions as to his mode or manner of driving, he is not responsible for the acts or negligence of the driver, and if he sustains an injury by means of a collision between his carriage and another he may recover damages from any party by whose fault or negligence the injury occurred, whether that of the driver of the carriage in which he is riding or of the driver of the other; he may sue either. The negligence of the driver of the carriage in which he is riding will not prevent him from recovering damages against the other driver, if he was negligent at the same time."—"The passenger in the carriage may direct the driver where to go—to such a park or to such a place that he wishes to see; so far the driver is under his direction; but my charge to you is that, as to the manner of driving, the driver of the carriage or the owner of the hack—in other words, he who has charge of it and has charge of the team— is the person responsible for the manner of driving, and the passenger is not responsible for that, unless he interferes and controls the matter by his own commands or requirements. If the passenger requires the driver to drive with great speed through a crowded street, and an injury should occur to foot passengers or to anybody else, why, then, he might be liable, because it was by his own command and direction that it was done, but ordinarily in a public hack the passengers do not control the driver, and therefore I hold that unless you believe Mr. Hackett exercised control over the driver in this case, he is not liable for what the driver did. If you believe he did exercise control, and required the driver to cross at this particular time, then he would be liable because of his interference."

The plaintiff recovered judgment, and this instruction was alleged as error, for which its reversal was sought.

*Mr. R. W. De Forest* and *Mr. F. L. Hall* for plaintiff in error.—If the driver of the carriage was the agent or servant of the defendant in error, his negligence would be attributable to the master. The leading English cases are *Thorogood* v. *Bryan*, 8 C. B. 115, and *Cattlin* v. *Hills*, 8 C. B. 123, both apparently considered together.

The former was an action against the owner of an omnibus for the negligence of his driver in running over and killing a passenger alighting in the street from another omnibus.

The court held that the negligence of the driver of the omnibus from which the passenger was alighting prevented a recovery, and placed the decision upon the ground of identity between the passenger and his driver, and said:

" The negligence that is relied on as an excuse is not the personal negligence of the party injured, but the negligence of the driver of the omnibus in which he was a passenger. But it appears to me that having trusted the party by selecting the particular conveyance, the plaintiff has so far identified himself with the owner and his servants, that if any injury results from their negligence, he must be considered a party to it."

This rule has been followed in England. *Bridge* v. *Grand Junction Railway Co.*, 8 M. & W. 214; *Waite* v. *North Eastern Railway Co.*, 7 Weekly Reporter, 311; *Child* v. *Hearn*, 22 Weekly Reporter, 864; *Armstrong* v. *Lancashire & Yorkshire Railway Co.*, L. R. 10 Exch. 47. In this country it has been followed in its entirety in Pennsylvania. *Philadelphia & Reading Co.* v. *Boyer*, 97 Penn. St. 91. In other States there has been great diversity of opinion. *Bennett* v. *New Jersey Railroad Co.*, 36 N. J. L. (7 Vroom), 225; *Chapman* v. *New Haven Railroad Co.*, 19 N. Y. 341; *Brown* v. *New York Central Railroad Co.*, 32 N. Y. 597; *Webster* v. *Hudson River Railroad Co.*, 38 N. Y. 260; *Barrett* v. *Third Avenue Railroad Co.*, 45 N. Y. 628; *Robinson* v. *New York Central Railroad Co.*, 66 N. Y. 11; *Dyer* v. *Erie Railway Co.*, 71 N. Y.

228; *Masterson* v. *New York Central Railroad Co.*, 84 N. Y. 247; *Smith* v. *Smith*, 2 Pick. 621; *Transfer Co.* v. *Kelly*, 36 Ohio St. 86; *Albion* v. *Hetrick*, 90 Ind. 545; *Toledo, Wabash & Western Railway Co.* v. *Miller*, 76 Ill. 278; *Cuddy* v. *Horn*, 46 Mich. 596; *Payne* v. *Chicago & Rock Island Co.*, 39 Iowa, 523; *Stafford* v. *Oskaloosa*, 57 Iowa, 748; *Prideaux* v. *Mineral Point*, 43 Wisc. 513; *Otis* v. *Janesville*, 47 Wisc. 422; *Callahan* v. *Sharp*, 27 Hun (34 N. Y. Supreme Ct.), 85. In the latter, in which the facts were exactly similar to those in this case, the court said: "It may be stated for a general rule, that where the relation of superior and subordinate exists, the maxim *respondeat superior* has application coextensive with the relation. 'Where a master temporarily lends his servant to another, under whose immediate control he is for the time being, and whose work he is doing, the master will not be responsible for his servant's torts, committed during such temporary employment by another.' Moaks' Underhill on Torts, 42." The case was affirmed in the Court of Appeals without an opinion. An examination of the briefs of counsel shows that the points discussed in the opinion in Hun were the points discussed in the appellate court. See also *McGuire* v. *Grant*, 25 N. J. L. (1 Dutcher), 356; *Blake* v. *Ferris*, 5 N. Y. 48.

In view of these authorities and the arguments sustaining our position contained in them, we submit that the relationship of master and servant existed between them, and that the negligence of the driver Brown is to be imputed to the defendant in error Hackett. But if this court shall hold that the full relationship of master and servant did not exist between the defendant in error and the driver Brown, then we submit that there still remained the power to control the driver, which was inherent in the hiring, as well as to the manner of his driving as to the places where he should go; that, the power existing, it was the duty of the defendant in error to exercise that power, to prevent a negligent act on the part of the driver, where there was a known imminent danger being encountered, and that by a failure to exercise such power the negligence of the driver is properly imputable to him.

*Mr. Robert H. Hinckley* and *Mr. Peter L. Voorhees* for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court. After stating the facts in the language reported above, he continued:

That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong. It would seem that the converse of this doctrine should be accepted as sound—that when one has been injured by the wrongful act of another, to which he has in no respect contributed, he should be entitled to compensation in damages from the wrong-doer. And such is the generally received doctrine, unless a contributory cause of the injury has been the negligence or fault of some person towards whom he sustains the relation of superior or master, in which case the negligence is imputed to him, though he may not have personally participated in or had knowledge of it; and he must bear the consequences. The doctrine may also be subject to other exceptions growing out of the relation of parent and child, or guardian and ward, and the like. Such a relation involves considerations which have no bearing upon the question before us.

To determine, therefore, the correctness of the instruction of the court below—to the effect that if the plaintiff did not exercise control over the conduct of the driver at the time of the accident he is not responsible for the driver's negligence, nor precluded thereby from recovering in the action—we have only to consider whether the relation of master and servant existed between them. Plainly, that relation did not exist. The driver was the servant of his employer, the livery-stable keeper, who hired out him with horse and carriage, and was responsible for his acts. Upon this point we have a decision of the Court of Exchequer in *Quarman* v. *Burnett*, 6 M. & W.

499, 507. In that case it appeared that the owners of a chariot were in the habit of hiring for a day, or a drive, horses and a coachman from a job-mistress, for which she charged and received a certain sum. She paid the driver by the week and the owners of the chariot gave him a gratuity for each day's service. On one occasion he left the horses unattended and they ran off and against the chaise of the plaintiff, seriously injuring him and the chaise, and he brought an action against the owners of the chariot and obtained a verdict; but it was set aside on the ground that the coachman was the servant of the job-mistress, who was responsible for his negligence. In giving the opinion of the court, Baron Parke said: "It is undoubtedly true that there may be special circumstances which may render the hirer of job-horses and servants responsible for the neglect of a servant, though not liable by virtue of the general relation of master and servant. He may become so by his own conduct, as by taking the actual management of the horses or ordering the servant to drive in a particular manner, which occasions the damage complained of, or to absent himself at one particular moment, and the like." As none of these circumstances existed it was held that the defendants were not liable, because the relation of master and servant between them and the driver did not exist.

This doctrine was approved and applied by the Queen's Bench Division, in the recent case of *Jones* v. *Corporation of Liverpool*, 14 Q. B. D. 890. The corporation owned a water-cart and contracted with a Mrs. Dean for a horse and driver, that it might be used in watering the streets. The horse belonged to her, and the driver she employed was not under the control of the corporation otherwise than that its inspector directed him what streets or portions of streets to water. Such directions he was required to obey under the contract with Mrs. Dean for his employment. The carriage of the plaintiff was injured by the negligent driving of the cart, and, in an action against the corporation for the injury, he recovered a verdict, which was set aside upon the ground that the driver was the servant of Mrs. Dean, who had hired both him and the horse to the corporation.

In this country there are many decisions of courts of the highest character to the same effect, to some of which we shall presently refer.

The doctrine resting upon the principle that no one is to be denied a remedy for injuries sustained, without fault by him, or by a party under his control and direction, is qualified by cases in the English courts, wherein it is held that a party who trusts himself to a public conveyance is in some way identified with those who have it in charge, and that he can only recover against a wrong doer when they who are in charge can recover. In other words, that their contributory negligence is imputable to him, so as to preclude his recovery for an injury when they by reason of such negligence could not recover. The leading case to this effect is *Thorogood* v. *Bryan*, decided by the Court of Common Pleas in 1849, 8 C. B. 114. It there appeared that the husband of the plaintiff, whose administratrix she was, was a passenger in an omnibus. The defendant, Mrs. Bryan, was the proprietress of another omnibus running on the same line of road. Both vehicles had started together and frequently passed each other, as either stopped to take up or set down a passenger. The deceased, wishing to alight, did not wait for the omnibus to draw up to the curb, but got out whilst it was in motion, and far enough from the path to allow another carriage to pass on the near side. The defendant's omnibus coming up at the moment, he was run over, and in a few days afterwards died from the injuries sustained. The court, among other things, instructed the jury, that if they were of the opinion that want of care on the part of the driver of the omnibus in which the deceased was a passenger, in not drawing up to the curb to put him down, had been conducive to the injury, the verdict must be for the defendant, although her driver was also guilty of negligence. The jury found for the defendant, and the court discharged a rule for a new trial for misdirection, thus sustaining the instruction. The grounds of its decision were, as stated by Mr. Justice Coltman, that the deceased, having trusted the party by selecting the particular conveyance in which he was carried, had so far identified himself with the

owner, and her servants, that if any injury resulted from their
negligence, he must be considered a party to it; "In other
words, " to quote his language, " the passenger is so far identi-
fied with the carriage in which he is travelling, that want of
care on the part of the driver will be a defence of the driver of
the carriage which directly caused the injury." Mr. Justice
Maule, in the same case, said that the passenger " chose his
own conveyance and must take the consequences of any
default of the driver he thought fit to trust." Mr. Justice
Cresswell said: " If the driver of the omnibus the deceased
was in had, by his negligence or want of due care and skill,
contributed to any injury from a collision, his master clearly
could maintain no action, and I must confess I see no reason
why a passenger, who employs the driver to carry him, stands
in any different position." Mr. Justice Williams added that
he was of the same opinion. He said: " I think the
passenger must, for this purpose, be considered as identified
with the person having the management of the omnibus
he was conveyed by."

What is meant by the passenger being " identified with
the carriage," or " with the person having its management,"
is not very clear. In a recent case, in which the Court of
Exchequer applied the same test to a passenger in a
railway train, which collided with a number of loaded wagons
that were being shunted from a siding by the defendant,
another railway company, Baron Pollock said that he
understood it to mean " that the plaintiff, for the purpose
of the action, must be taken to be in the same position as
the owner of the omnibus or his driver." *Armstrong* v.
*Lancashire & Yorkshire Railroad Co.*, L. R. 10 Ex. 47,
52. Assuming this to be the correct explanation, it is difficult
to see upon what principle the passenger can be considered
to be in the same position with reference to the negligent
act as the driver who committed it, or as his master, the
owner. Cases cited from the English courts, as we have seen,
and numerous others decided in the courts of this country,
show that the relation of master and servant does not exist
between the passenger and the driver, or between the

passenger and the owner. In the absence of this relation, the imputation of their negligence to the passenger, where no fault of omission or commission is chargeable to him, is against all legal rules. If their negligence could be imputed to him, it would render him equally with them responsible to third parties thereby injured, and would also preclude him from maintaining an action against the owner for injuries received by reason of it. But neither of these conclusions can be maintained ; neither has the support of any adjudged cases entitled to consideration.

The truth is, the decision in *Thorogood* v. *Bryan* rests upon indefensible ground. The identification of the passenger with the negligent driver or the owner, without his personal co-operation or encouragement, is a gratuitous assumption. There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world.

*Thorogood* v. *Bryan* has not escaped criticism in the English courts. In the court of admiralty it has been openly disregarded. In *The Milan*, Dr. Lushington, the judge of the High Court of Admiralty, in speaking of that case, said : " With due respect to the judges who decided that case, I do not consider that it is necessary for me to dissect the judgment, but I decline to be bound by it, because it is a single case ; because I know, upon inquiry, that it has been doubted by high authority ; because it appears to me not reconcilable with other principles laid down at common law ; and, lastly, because it is directly against *Hay* v. *La Neve* and the ordinary practice of the court of admiralty." Lush. 388, 403.

In this country the doctrine of *Thorogood* v. *Bryan* has not been generally followed. In *Bennett* v. *New Jersey Railroad Co.*, 36 N. J. L. (7 Vroom) 225, and *New York, Lake Erie & Western Railroad Co.* v. *Steinbrenner*, 47 N. J. L. (18 Vroom) 161, it was elaborately examined by the Supreme Court and the Court of Errors of New Jersey, in opinions of marked ability and learning, and was disapproved and rejected. In the first

case it was held that the driver of a horse-car was not the agent of the passenger so as to render the passenger chargeable for the driver's negligence. The car, in crossing the track of the railroad company, was struck by its train, and the passenger was injured, and he brought an action against the company. On the trial the defendant contended that there was evidence tending to show negligence by the driver of the horse-car, which was in part productive of the accident, and the presiding judge was requested to charge the jury, that if this was so, the plaintiff was not entitled to recover; but the court instructed them that the carelessness of the driver would not affect the action or bar the plaintiff's right to recover for the negligence of the defendant. And this instruction was sustained by the court. In speaking of the "identification" of the passenger in the omnibus with the driver, mentioned in *Thorogood* v. *Bryan*, the court, by the Chief Justice, said: "Such identification could result only in one way, that is, by considering such driver the servant of the passenger. I can see no ground upon which such a relationship is to be founded. In a practical point of view, it certainly does not exist. The passenger has no control over the driver or agent in charge of the vehicle. And it is this right to control the conduct of the agent which is the foundation of the doctrine that the master is to be affected by the acts of his servant. To hold that the conductor of a street-car or of a railroad train is the agent of the numerous passengers who may chance to be in it, would be a pure fiction. In reality there is no such agency, and if we impute it, and correctly apply legal principles, the passenger, on the occurrence of an accident from the carelessness of the person in charge of the vehicle in which he is being conveyed, would be without any remedy. It is obvious, in a suit against the proprietor of the car in which he was a passenger, there could be no recovery if the driver or conductor of such car is to be regarded as the servant of the passenger. And so, on the same ground, each passenger would be liable to every person injured by the carelessness of such driver or conductor, because, if the negligence of such agent is to be attributed to the passenger for one purpose, it would be entirely arbitrary to

say that he is not to be affected by it for other purposes." 7 Vroom, 227, 228.

In the latter case it appeared that the plaintiff had hired a coach and horses, with a driver, to take his family on a particular journey. In the course of the journey, while crossing the track of the railroad, the coach was struck by a passing train and the plaintiff was injured. In an action brought by him against the railroad company, it was held that the relation of master and servant did not exist between him and the driver, and that the negligence of the latter, co-operating with that of persons in charge of the train, which caused the accident, was not imputable to the plaintiff, as contributory negligence, to bar his action.

In New York a similar conclusion has been reached. In *Chapman* v. *New Haven Railroad Co.*, 19 N. Y. 341, it appeared that there was a collision between the trains of two railroad companies, by which the plaintiff, a passenger in one of them, was injured. The Court of Appeals of that State held that a passenger by railroad was not so identified with the proprietors of the train conveying him, or with their servants, as to be responsible for their negligence, and that he might recover against the proprietors of another train for injuries sustained from a collision through their negligence, although there was such negligence in the management of the train conveying him as would have defeated an action by its owners. In giving the decision the court referred to *Thorogood* v. *Bryan,* and said that it could see no justice in the doctrine in connection with that case, and that to attribute to the passenger the negligence of the agents of the company, and thus bar his right to recover, was not applying any existing exception to the general rule of law, but was framing a new exception based on fiction and inconsistent with justice. The case differed from *Thorogood* v. *Bryan* in that the vehicle carrying the plaintiff was a railway train instead of an omnibus, but the doctrine of the English case, if sound, is as applicable to passengers on railway trains as to passengers in an omnibus; and it was so applied, as already stated, by the Court of Exchequer in the recent case of *Armstrong* v. *Lancashire & Yorkshire Railroad Co.*

In *Dyer* v. *Erie Railway Co.* 71 N. Y. 228, the plaintiff was injured while crossing the defendant's railroad track on a public thoroughfare. He was riding in a wagon by the permission and invitation of the owner of the horses and wagon. At that time a train standing south of certain buildings, which prevented its being seen, had started to back over the crossing without giving the driver of the wagon any warning of its approach. The horses becoming frightened by the blowing off of steam from engines in the vicinity, became unmanageable, and the plaintiff was thrown or jumped from the wagon, and was injured by the train, which was backing. It was held that no relation of principal and agent arose between the driver of the wagon and the plaintiff, and, although he travelled voluntarily, he was not responsible for the negligence of the driver, where he himself was not chargeable with negligence, and there was no claim that the driver was not competent to control and manage the horses.

A similar doctrine is maintained by the courts of Ohio. In *Transfer Company* v. *Kelly*, 36 Ohio State, 86, 91, the plaintiff, a passenger on a car owned by a street railroad company, was injured by its collision with a car of the Transfer Company. There was evidence tending to show that both companies were negligent, but the court held that the plaintiff, he not being in fault, could recover against the Transfer Company, and that the concurrent negligence of the company on whose cars he was a passenger could not be imputed to him, so as to charge him with contributory negligence. The Chief Justice, in delivering the opinion of the court, said: "It seems to us, therefore, that the negligence of the company, or of its servants, should not be imputed to the passenger, where such negligence contributes to his injury jointly with the negligence of a third party, any more than it should be so imputed, where the negligence of the company, or its servant, was the sole cause of the injury." "Indeed," the Chief Justice added, "it seems as incredibile to my mind that the right of a passenger to redress against a stranger for an injury caused directly and proximately by the latter's negligence, should be denied, on the ground that the negligence of his carrier contributed to his injury, he being

without fault himself, as it would be to hold such passenger responsible for the negligence of his carrier, whereby an injury was inflicted upon a stranger. And of the last proposition it is enough to say that it is simply absurd."

In the Supreme Court of Illinois the same doctrine is maintained. In the recent cases of the *Wabash, St. Louis & Pacific Railway Co.* v. *Schacklet*, 105 Ill. 364, the doctrine of Thorogood's case was examined and rejected, the court holding that, where a passenger on a railway train is injured by the concurring negligence of servants of the company on whose train he is travelling, and of the servants of another company with whom he has not contracted, there being no fault or negligence on his part, he or his personal representatives may maintain an action against either company in default, and will not be restricted to an action against the company on whose train he was travelling.

Similar decisions have been made in the courts of Kentucky, Michigan, and California. *Danville &c. Turnpike Co.* v. *Stewart*, 2 Met. (Ky.) 119; *Louisville & Cincinnati Railroad Co.* v. *Case*, 9 Bush, 728; *Cuddy* v. *Horn*, 46 Mich. 596; *Tompkins* v. *Clay Street Railroad Co.*, 4 West Coast Reporter, 537.

There is no distinction in principle whether the passengers be on a public conveyance like a railroad train or an omnibus, or be on a hack hired from a public stand in the street for a drive. Those on a hack do not become responsible for the negligence of the driver if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. If he is their agent so that his negligence can be imputed to them to prevent their recovery against a third party, he must be their agent in all other respects, so far as the management of the carriage is concerned, and responsibility to third parties would attach to them for injuries caused by his negligence in the course of his employment. But, as we have already stated, responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury. From the simple fact of hiring the carriage or riding in it no such liability can arise. The party hiring or riding

.must in some way have co-operated in producing the injury complained of before he incurs any liability for it. "If the law were otherwise," as said by Mr. Justice Depue in his elaborate opinion in the latest case in New Jersey, "not only the hirer of the coach but also all the passengers in it would be under a constraint to mount the box and superintend the conduct of the driver in the management and control of his team, or be put for remedy exclusively to an action against the irresponsible driver or equally irresponsible owner of a coach taken, it may be, from a coach stand, for the consequences of an injury which was the product of the co-operating wrongful acts of the driver and of a third person, and that, too, though the passengers were ignorant of the character of the driver, and of the responsibility of the owner of the team, and strangers to the route over which they were to be carried." *New York, Lake Erie & Western Railroad* v. *Steinbrenner*, 47 N. J. L. (18 Vroom), 161, 171.

In this case it was left to the jury to say whether the plaintiff had exercised any control over the conduct of the driver further than to indicate the places to which he wished him to drive. The instruction of the court below, that unless he did exercise such control and require the driver to cross the track at the time the collision occurred, the negligence of the driver was not imputable to him, so as to bar his right of action against the defendant, was therefore correct, and

*The judgment must be affirmed.*