ILLINOIS CENTRAL RAILROAD CO. *v.* J. H. McKAY ET AL.

MASTER AND SERVANT. *Contributory negligence. Fire from locomotive.*

The owner of growing crops, destroyed by fire negligently communicated from a locomotive, cannot recover of the railroad company therefor, if his servant intrusted with the care of the premises, was able, when he discovered the fire, to extinguish it or prevent its spreading, and wilfully or negligently failed to do either.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

The opinion states the facts.

*W. P. & J. B. Harris,* for the appellants.

Farris was the servant of plaintiffs in charge of the farm. There is no conflict of evidence as to his connection with the affair. He admits that he knew of the danger from the fire; he was satisfied that the fire would spread; he could have extinguished it, but intentionally refused to do so, saying that the railroad company had started the fire, and it must put it out. Plaintiffs were under the duty of making reasonable exertions to lessen their damage; and if they, through negligence or willfulness, allowed the damage to be unnecessarily enhanced, the increased loss must fall on them. 84 Am. Dec., 340; 5 Lawson's Rights, Rem. and Prac., sec. 2819; Beach Con. Neg., 62, 249.

The same obligation was on the servant that would rest upon the plaintiffs themselves. 2 Sherman & Redfield on Negligence, 679, 682; 38 Ark., 357; 42 Ill., 355; 94 Ill., 448; 53 *Ib.*, 447; 11 W. Va., 57; 78 N. C., 305; 20 Am. Dec., 341.

*Calhoon & Green,* for appellee.

The evidence shows that Farris was a hired hand, working under directions, and, in the absence of both of plaintiffs, was to look after things to see that nothing went wrong. His position was that of any other menial in the absence of the master, with no authority except such as would pertain to ordinary domestic servants in the absence of master or mistress. The old doctrine of imputed negligence announced in *Thorogood* v. *Bryan,* was extensively examined in *Little* v. *Hackett,* 116 U. S., 366, and also in 89 Ala., 521, and entirely overthrown. See 4 Am. & Eng. Ency. L., 82.

To constitute a servant the representative of the master in the matter of negligence, there must be an agency. 2 Sherman & Redfield, Neg., § 144.

The act done or omitted must be within the apparent scope of authority. The authorities cited do not hold that because servants are mere employes their negligence is to be imputed to the master. In a case like this, only the negligence of one who is the general agent in charge of the farm can be imputed.

Argued orally by *J. B. Harris,* for appellant, and *M. Green,* for appellee.

COOPER, J., delivered the opinion of the court.

The appellees sued the appellant to recover the value of certain strawberry plants destroyed by fire negligently communicated by sparks from its train.

The fire was communicated on Sunday evening, and a small portion of the plants were burned that day. As to the injury to those the right of recovery is not controverted by

appellant.   The fire was, on Sunday night, checked in its progress by the exertions of those residing in the vicinity, but there was left burning a large, dry stump adjacent to another field, the sparks from which set this field on fire the next day some time between 8 and 12 o'clock A.M., and a large number of plants growing therein were burned.   It is liability for the loss thereby occasioned that is contested by the appellant. Exemption from responsibility for the plants burned on Monday is claimed because of the contributory negligence of one Farris, the servant and agent of the appellees, who, having seen the burning stump, and appreciating the danger of its communicating fire to the adjoining field, wilfully and negligently omitted to make any endeavor to extinguish it, but left the premises, returning only after the injury had been done.

The appellees contend that whether Farris was guilty of negligence was fairly submitted to the jury, and the verdict, being supported by sufficient evidence in this respect, is conclusive.

If mistaken in this, then they say that Farris was not their servant having such relation to the property destroyed as that his negligence should be imputed to them.

If mistaken in this also, then they say that after Farris had left the premises, and before the injury was done, the servants of the appellants came thereon to extinguish the fire and negligently failed to do so, wherefore the subsequent injury was proximately caused, not by the negligence of Farris, but by that of these servants of the appellant.

In the light of the undisputed evidence of the character of Farris' employment, and of his conduct on the occasion of the fire, we are constrained to declare that he was the agent of the appellees, charged with the duty of using reasonable exertion to prevent the injury which resulted, and that he deliberately and knowingly failed to discharge it, and that his negligence was the negligence of the appellees, and precludes a recovery by them for the damage done by the fire on Monday.

The following facts, showing the condition of the field burned, the danger that fire would be communicated to it from the burning stump, the knowledge of Farris that there was such danger, the character of his employment and relation to the property destroyed, and his conduct in reference to the fire, are drawn from the testimony of the appellees and from that of Farris:

There had been no rain since the fourth day of August, the fire occurring on the eighth of December. The field was thick, with grass—probably eighteen inches high. The soil was a sandy loam that dried out easily. The season had been unusually dry, "so reported by the oldest people in Byram. The wells and creeks were never known to give out there before. People were hauling water there that had never been know to do it before since the world began." So much for the condition of the field as described by the appellees themselves, and in which there is practically no contradiction by any witness. Farris testified that on Monday morning when he left the premises the wind was blowing "gradually and slowly" to the north; that a log-heap (not exactly located) and a big stump near the edge of the ditch which intervened between the field, were burning. "It was a big fire, and there was danger. I was satisfied that it would cross that morning when I went to my work. It went across from the stump. The grass was dry and grown up. The stump was burning. It looked like the fire would go over. There was grass on the other side. I got my wagon and went to the swamp. I could have gotten water and put it out, but I did not do it. I could have run a furrow, but I did not do it. I got on my wagon very early to make a day's work."

The appellee, McKay, testified that Farris was a hired hand living on the place, and, when the owners were away, that he and his family were in charge of the place, or, as the witness states, "to look after matters if any thing went wrong." Farris was paid fifteen dollars per month and his board, lived on the place, and worked under instructions of

his employers.   He would write to McKay when he needed him to come to the place.   When there was nothing to do on the place, Farris was permitted to work for third persons, and had agreed to work for a Mr. Barnes on Monday, and it was to do so that he left the premises on that day.

The responsibility of the defendant company springs from the negligence of those of its servants to whom the management and control of its trains were committed.   Through the contributing negligence of that servant of the plaintiffs to whom their property was also intrusted, the damage was very greatly increased.   The same principle of law is applicable to each.   It is, that the act of the agent is that of the principal, and that whether it be an act of commission or of omission, whether it be of the one or the other character, its consequences must rest upon him who trusted his affairs to the negligent servant; and where the servants of both parties are guilty of negligence there can no more be a recovery by one principal against the other than there could be if each principal had done or omitted to do the act done or omitted by their respective servants.

The dissent of the American courts from the case of *Thorogood* v. *Bryan*, 8 C. B., 115, is only in so far as it imputes to one not a master the negligence of the negligent person.   The whole argument of Field, J., in *Little* v. *Hackett*, 116 U. S., 366, is devoted to showing that the party injured was not the master of the negligent driver of the conveyance, and in this respect only has *Thorogood* v. *Bryan* been criticised.   That Farris was the servant of the appellees, charged with the custody and care of the injured premises, is too clear for disputation, and it is equally certain on all the authorities that for his negligence within the scope of his employment his principals are bound.

The appellees contended in the court below that if Farris was their agent, and was guilty of negligence, yet, if after his neglect and before the fire was communicated to the field on Monday, the servants of the defendant came upon the

premises and negligently failed to extinguish the fire, the defendant was liable. This contention the court seems to have rejected by refusing the fifth and sixth instructions asked by appellees. We therefore assume that the court inadvertently gave the plaintiffs' second instruction, which was as follows:

"If the jury believe from the evidence that the danger of the spread of the fire from the smoldering fires of Monday to the strawberry patch was not reasonably apparent to Farris when he left the place, and that after Farris left, the defendant's section-boss came upon the place and left the fire burning, then the contributory negligence of Farris is no defense."

It is difficult to say exactly what was meant by this instruction. It may have been intended as a definition of what was *not* contributory negligence; but, if so, it very strangely ends by assuming that but for the subsequent presence of the servants of the company on the premises, and their then negligence, the appellees would have been chargeable with the negligence of Farris. It may be that it was intended to charge the jury that the contributory negligence of Farris was no defense, if, after he had left the premises, the servants of the defendant saw the danger, and failed to extinguish the fire.

Counsel for appellees have cited no authority to sustain the proposition that where both plaintiff and defendant are guilty of negligence in reference to fires, the one who has the last opportunity of arresting its progress is liable for failing so to do. We have not pursued the investigation, for the reason that we fail to find in the record any fact testified to upon which the instruction, if correct, could rest. Clements, the section-boss, says that he went upon the premises on Monday morning to examine the fire; that the fire did not burn the berries until between eight and nine o'clock; that he had the section-hands with him, among them one McKeever. This witness did not state whether he was upon the premises before, during, or after the fire in the field; but

---

---

McKeever, who was also introduced by the plaintiffs, testified that it was on Tuesday morning instead of Monday that Clements and he were on the place. Whether it was Monday or Tuesday these parties were there, might therefore be uncertain ; but this witness distinctly states that when they got there the strawberry field *had already been burned.*

<em>Reversed and remanded for a new trial.</em>