(68 South. 96)

No. 20321.

## WILKINSON v. MYATT–DICKS MOTOR CO. et al.

(March 22, 1915. Rehearing Denied April 12, 1915.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ☞301—AUTOMOBILE ACCIDENT—NEGLIGENCE OF CHAUFFEUR—LIABILITY OF PASSENGERS.

Liability of passengers for the negligence of the chauffeur of an automobile cannot arise from the simple fact of hiring or riding in such a conveyance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. ☞301.]

2. MASTER AND SERVANT ☞301 — TERMINATION OF RELATION—AUTOMOBILE ACCIDENT—NEGLIGENCE OF CHAUFFEUR — LIABILITY OF PASSENGERS.

Passengers are not responsible for the negligence of the chauffeur of an automobile, if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. This doctrine applies to persons who ride in private automobiles by permission and invitation of the owners or person in charge. Where service is restricted to a single act or transaction, the relation of master and servant (if such exist) terminates with the act or transaction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. ☞301.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Mrs. Laura Wilkinson against the Myatt-Dicks Motor Company and others. From judgment for defendants, plaintiff appeals. Affirmed.

George J. Untereiner, of New Orleans, for appellant. Titche & Rogers and Gordon Boswell, all of New Orleans, for appellee Myatt-Dicks Motor Co. Hall, Monroe & Lemann, of New Orleans, for appellee Blum. Charles Rosen, of New Orleans, for appellee Levy.

LAND, J. Plaintiff sued the three defendants for $15,000 as damages for the death of her husband, who was run over and killed by an automobile on September 11, 1910, at Canal and Villere streets, in the city of New Orleans. Herman Blum and Max M. Levy are the codefendants of the motor company.

The petition alleges that the accident was caused by the gross negligence of one Harry Rooney, the driver, in not sounding an alarm, and in running the car at an excessive and unlawful rate of speed.

The petition alleges:

"That on September 11, 1910, whilst Calvin Wilkinson, petitioner's husband, was crossing the roadway on the upper side of Canal street at Villere street, at the place usually used by pedestrians, * * * he was run into, knocked down, and killed by an automobile owned and operated by the Myatt-Dicks Motor Company, in which the aforesaid Max Levy and Herman Blum, accompanied by two ladies, were riding, which automobile, petitioner is informed and believes and so alleges, was operated by one Harry Rooney, an employé of the Myatt-Dicks Motor Company, under the joint control of the said Myatt-Dicks Motor Company and the said Max Levy and the said Herman Blum; that, in driving said car, the aforesaid Harry Rooney was acting under the direction of the aforesaid Max Levy and Herman Blum."

The company for answer pleaded the general issue, coupled with a special denial that Rooney was one of its employés, or that said company had any interest in, or control over, the car or its driver, as alleged in the petition, at the time of the accident.

The other two defendants, after filing several exceptions, which were overruled, answered by pleading the general issue, coupled with a special denial that the car was operated under their control or direction, as alleged in the petition. These two defendants also pleaded in supplemental answers contributory negligence on the part of the deceased.

The case was tried before a jury, and, from a verdict and judgment in favor of all the defendants, the plaintiff has appealed.

Plaintiff called Rooney as a witness, who testified substantially as follows: At the time of the accident, Rooney was chauffeur for the Kenilworth Sugar Company, and was operating one of the cars belonging to said company. The accident happened about 1:15

o'clock in the morning of September 11, 1910. Rooney was coming from the Halfway House, at a speed between 20 and 22 miles per hour. He had as passengers the defendants Levy and Blum and two women. These two men became Rooney's passengers under the following circumstances: Rooney was sitting in the garage of the Myatt-Dicks Motor Company when Blum called over the phone for Roy Lloyd, an employé of the company. Rooney replied that Roy was not there, and, on being told by Blum that he was having trouble with the tire of the car, offered to help him out. This offer was accepted; and Rooney, having obtained a new tire from the Myatt-Dicks Motor Company, took it out in a car under his control, belonging to the Kenilworth Sugar Company. On reaching the spot where Blum's car was stalled, Rooney found that he could not, with the tools he had with him, repair the car. How the Blum party became passengers on Roonev's car appears from the following questions and answers:

"Q. Were you requested to take them in your car?
"A. No, sir.
"Q. How did you come to get them in there?
"A. I told him there was room inside—I could see it could not be repaired—and if they cared to they could ride in my car.
"Q. They accepted the service that way?
"A. They got in and rode in."

The foregoing is a summary of all of Rooney's direct examination. His cross-examination developed that he had never been employed by any of the defendants, and that all of the services rendered by him on the occasion in question were volunteered and a matter of accommodation; that neither Blum nor Levy gave him any instructions, nor said anything to him after they got into the car; and that, before starting, the only person he spoke to was Blum, offering to take his party down town to Canal and Royal.

Defendant Levy testified that he did not know Rooney, never spoke to him until after the accident, and had nothing to do with the procurement of his services on the occasion in question.

Defendant Blum's testimony corroborates in the main the statements of Rooney, that the services of the latter were volunteered as a matter of accommodation, and that Blum gave Rooney no directions or instructions as to the operation of the car.

The only connection that the defendant company had with the transaction between Rooney and Blum was that one of its officers or employés gave Rooney a requisition for a tire on another company, which charged the same to Blum or his father. It is manifest that the plaintiff has utterly failed to make out a case against the Myatt-Dicks Motor Company, which must have been sued under a complete misapprehension of the facts.

[1] As to the other two defendants, it seems to be well settled that a person who hires a hack, automobile, or other public conveyance does not become responsible for the negligence of the driver or chauffeur, if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. From the simple fact of hiring the carriage or riding in it, no such liability can arise. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Roby v. Kansas City Southern Ry. Co., 130 La. 880, 58 South. 696, 41 L. R. A. (N. S.) 355; Perez v. Railroad Co., 47 La. Ann. 1391, 17 South. 869; Berry on Law of Automobiles (1909) § 180.

[2] The same doctrine applies to a person who rides in a private vehicle by permission and invitation of the owner. See Dyer v. Erie Railway Co., 71 N. Y. 228, as cited in Little v. Hackett, 116 U. S. 378, 6 Sup. Ct. 391, 29 L. Ed. 652. In the latter case the court in summing up said:

"But, as we have already stated, responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing

the injury. From the simple fact of hiring the carriage or riding in it, no such liability can arise. The party hiring or riding must in some way have co-operated in producing the injury complained of before he incurs any liability for it." 116 U. S. 379, 380, 6 Sup. Ct. 397, 29 L. Ed. 652.

Counsel for plaintiff in his brief contends that Rooney was the servant of all the defendants. Rooney was never employed by the defendant motor company, but volunteered to serve Blum in the matter of procuring a new tire. The company assisted Rooney in procuring the tire for Blum, but there all connection between the motor company and Rooney and Blum terminated. Rooney transported himself and the tire in a car belonging to another company, and, after his failure to repair Blum's car, volunteered to take the Blum party in his car to Canal and Royal streets. We fail to perceive any connection between the furnishing of the new tire and this joy ride in the small hours of the morning. It is inconceivable that the defendant company can be held liable for the alleged negligence of the chauffeur of another company.

Rooney may have been the servant of Blum as to the procuring of the new tire and the repair of his car; but, when Rooney announced that the car could not be repaired, the relation of master and servant between them terminated. When Rooney invited the Blum party to ride in his car, the only relation between him and them was of a social nature. As to Levy, there were no business relations whatever between him and Rooney. The argument that Blum and Levy, as passengers or riders in the car, were the masters of Rooney, the chauffeur, is refuted by the doctrine of Little v. Hackett, supra, in which case some English and American cases to the contrary were overruled. The evidence shows that the defendants Blum and Levy exercised no control or authority over Rooney, the chauffeur. Blum and Levy were passive as to the management of the car, and therefore cannot be held to have participated in the chauffeur's alleged violation of the municipal speed ordinance, as argued by counsel for plaintiff.

Judgment affirmed.