MORALES, PLAINTIFF AND APPELLEE, *v.* CENTRAL VANNINA, DEFENDANT AND APPELLANT:

## APPEAL from the First District Court of San Juan in an Action for Damages.

No. 2753.—Decided July 12, 1923.

DAMAGES—NEGLIGENCE—RAILROAD—GRADE CROSSING—BARRIERS.—The failure of the agents of a railroad company to operate the barriers referred to in section 12 of the Act of March 9, 1911, when a train approaches a grade crossing, amounts to the same as if there were no barriers, and such failure when the locomotive is running backwards at the crossing constitutes gross negligence.

ID.—ID.—ID.—ID.—ID.—When the barriers at a railroad crossing are generally closed when trains are approaching, the fact that they are open removes the usual obligation to stop, look and listen.

ID.—ID.—ID.—ID.—ID.—EVIDENCE.—In order to prove that it exercised the diligence required by section 1804 of the Civil Code the defendant offered oral evidence tending to show the competency of its employees and the manner in which orders were given for the operation of the barriers. *Held:* That a preponderance of the evidence showed that the barriers were not closed when they should have been in order to give warning of danger and to avoid accident, and if the fault was due to some defect in the mechanism which made its prompt operation impossible, it was not shown that such precautions were taken as the least diligent father of a family would take in such circumstances, for, on the contrary, the conditions under which the accident occurred and the fact that the locomotive was running backwards showed negligence in its highest degree.

ID.—ID.—MEASURE OF DAMAGES.—Considering the injuries received and the mental anguish and physical suffering undergone by the plaintiff because of the defendant's negligence, it was held that a judgment for $1,000 was reasonable.

The facts are stated in the opinion.

*Mr. D. Monserrat* for the appellant.

*Messrs. F. González* and *C. Iriarte, Jr.,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

On the public highway between Río Piedras and Caguas a collision occurred between a public service automobile and a locomotive belonging to the defendant whereby the plaintiff suffered various injuries. She brought the present action for damages.

In her complaint the plaintiff alleged that the defendant owns a railroad which crosses the public highway between Río Piedras and Caguas and that it has established a system of barriers at the said crossing for the protection of travelers; that on February 19, 1920, the plaintiff was a passenger in a public service automobile owned and being driven by Gerardo M. García and when the automobile crossed the railroad track at the grade crossing a locomotive of the defendant, without giving any signal or warning and the bars not having been lowered, collided with the automobile in which the plaintiff was traveling and as a consequence of the collision she received the following injuries: Excoriated contusions in the right and left inferior maxillary regions; an ecchymotic contusion in the upper third part of the crest of the tibia of the left leg; an ecchymotic contusion in the kneecap of the right leg, and a severe contusion in the front and back of the right thigh; that the plaintiff was confined to bed for eight days and during that time suffered acute pains and mental anguish, and that the said accident was due solely and exclusively to the negligence and carelessness of the defendant corporation because of the failure to ring a bell, blow a whistle or lower the bars to give warning of the approach of the locomotive.

In its answer the defendant admitted certain allegations, denied others and set up the following as new matter: (*a*) The lack of a cause of action. (*b*) That the collision was due solely and exclusively to the fault and negligence of the plaintiff in allowing the chauffeur to drive the automobile

at an excessive rate of speed when approaching the place where the collision occurred, without stopping to look and listen for the train which was approaching the crossing ringing a bell and without paying attention to the visible signals being made by the operator of the bars to the plaintiff with a red flag; in not ordering the chauffeur to reduce the speed of the automobile upon seeing that the bars were lowered, and in passing under them. (*c*) That the accident happened without fault or negligence on the part of the defendant or its employees, who used the diligence of a good father of a family to prevent it.

At the trial evidence was introduced by both parties and the trial court rendered judgment allowing the plaintiff $1,000 as damages. The defendant took the present appeal and assigns error on the part of the court as follows: In not holding that the failure to stop the automobile to look and listen constitutes contributory negligence; in not finding that the contributory negligence of the plaintiff was the proximate cause of the accident; in not applying section 1804 of the Civil Code, and in allowing an excessive and immoderate amount as damages.

In its opinion, after referring to the pleadings of the parties, the court said:

"That on the afternoon of February 19, 1920, the automobile owned and driven by Gerardo M. García, carrying among other passengers the plaintiff, Dr. José Eulogio Berríos, left San Juan for Yabucoa via Río Piedras; that when it left Río Piedras going towards the Vannina Central its speed was not excessive; that the driver or chauffeur, seeing that the bars used to stop traffic on the road when a train or locomotive was passing on the track which crosses the road were not lowered and believing that there was no danger, proceeded and when he approached the track a locomotive crossed the road without giving any signal by whistle, bell or other warning device to warn the chauffeur of the automobile when the automobile was so near the track that it could not be stopped, and the locomotive, which was running backwards, struck the auto-

mobile and demolished it, causing the plaintiff injuries and wounds that prevented him from performing his professional work for about three weeks, during which time he suffered physically and mentally.

"There is no doubt that if the defendant had lowered the bars while the locomotive was passing so as to prevent the automobiles on the road from crossing the track at that moment, the accident could not have occurred, because the chauffeur and some of the passengers at least would have noticed them and, in any event, the car would have collided with the barrier and been stopped.

"This is one of the cases in which the court has been able clearly to ascertain the negligence of the defendant.

"The court knows from the testimony of the witnesses that after the accident had occurred the defendant, in order to show its negligence (*sic*), attempted to lower the bars.

"The theory of the defendant that the bars were down and that the automobile crossed from the right side of the road to the left so as to pass under the bars and then crossed to the right in order to pass in front of the locomotive, was destroyed not only by the oral evidence but also by the ocular inspection of the place, because the distance between the bars and the track rendered such a feat impossible."

As may be seen, the trial court was firmly convinced that the accident was due solely and exclusively to the fact that the defendant, maintaining a system of bars at the grade crossing, did not lower the said bars as a warning signal when one of its locomotives, running backwards, crossed the road at the moment when the automobile in which the plaintiff was riding was about to cross the track, and thus that the accident occurred because of the fault and carelessness of the defendant. This was the conclusion reached after considerable evidence offered by both parties had been examined, and there being a conflict in the evidence which was adjusted by the trial court, we shall consider only whether the errors assigned as committed in weighing the evidence are manifest or were actually committed. However, there is a point of law arising

from the facts which is discussed by the appellant as the essential question on appeal. The appellant contends that the accident was due to the fact that upon approaching the crossing the plaintiff did not take the trouble, as a rule or legal standard of care, to stop, look and listen, and alleges that otherwise the plaintiff would have avoided the accident, and that this was not taken into account by the trial court. It seems that the general jurisprudence is quite clear and exact in cases like the present. When a railroad track crosses a public highway its owner is bound to take such reasonable precautions for the safety of travelers as ordinary prudence would indicate. There is a distinction as the matter may or may not be regulated by statute. When it is there is no difficulty in determining whether the railroad company has performed its duty to the public; but when it is not, or when the statute does not prescribe in what manner the necessary warning shall be given when a train approaches a crossing, the question of negligence in case of accident must be determined by the special circumstances of each case. 22 R. C. L. 988.

The former is the case here. In Porto Rico the matter is regulated by a statute that imposes upon railroad companies the duty of maintaining a system of barriers at places where their tracks cross the public highways. Section 12 of the Act concerning the regulation of railroad transportation, approved March 9, 1911, reads as follows:

"Sec. 12.—Be it further enacted, that all railroad companies of public service be and are hereby obliged to construct and maintain chains, gates, or other suitable protective devices, at all crossings of insular public roads, and at all such other crossings as the Executive Council may designate."

Later our Legislature passed Act No. 70 defining public service companies, etc., approved December 6, 1917. In subdivision "q" of section 3 of the said act, under the title

"Safety Devices for Crossings, etc.," the provisions of section 12 of the Act of 1911, *supra,* are reproduced and the statute reads:

"If a railroad company, to contract (*sic*) and maintain chains, gates, or other suitable protective devices, at all grade crossings of insular public roads and at all such other public crossings as the commission may designate, and subject to rules, regulations and orders of the commission, to fence in or otherwise properly guard or protect its tracks at such places as the commission may designate, so as to keep animals from entering upon such tracks; to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels and road or streets crossings and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on street crossings, and shall use, after sunset, such lights as may be necessary and the commission may determine." Acts of 1917, vol. II, page 449.

The statute itself requires the maintenance of a system of barriers at the place where the accident in this case occurred. This is a statutory notice to the public passing those places to prevent danger; therefore, failure to lower the barriers in time when a train is approaching and keep them lowered until after it has crossed is equivalent to the lack of such barriers and that omission constitutes negligence.

This Supreme Court has already applied section 12, *supra,* in the case of *Domínguez* v. *Porto Rico Railway, Light & Power Co.,* 19 P. R. R. 1038, and, speaking through Mr. Justice Aldrey, with reference to the system of barriers that must be maintained at the crossings of insular highways, expressed itself as follows:

"Gates and chains are the means used to close any place and prevent passage, and when they are employed at a railroad crossing they close and prevent passage over the track. When the gates or chains are in place it is practically impossible to enter the crossing unless these are broken or jumped over, therefore they

are a means of such a nature that when in place they prevent accidents and collisions, which is the object of the law in ordering their use. As was said in the case of *Chicago and Alton R. R. Co.* v. *Wise*, 206 Ill., 453, 69 N. E. Rep., 500, affirmed in 106 Ill. App., 174, the gates required by the statute are intended to serve as a warning as well as a physical obstruction."

"A railroad company is not legally bound to provide and maintain gates at street and highway crossings along its line unless so required by statute or ordinance, or unless it appears that the particular crossing is peculiarly dangerous. But where there is a valid statute or ordinance requiring gates to be operated, a failure to comply therewith is negligence." 22 R. C. L., page 1006.

It appears from the findings of the trial court that the barriers maintained by the defendant were not lowered as a signal warning to avoid the accident. We find nothing in the evidence contrary to the finding of the trial court on this point, but everything indicates that the facts were properly weighed. If to this be added the fact that the trial judge inspected the scene of the occurrence and witnessed the manner in which the bars are operated, destroying all possibility that the automobile could pass under them as the defendant attempted to show, that is a circumstance that carries a stronger conviction to the trial judge and is a reason why this court should not interfere with the weighing of facts that only the trial judge could properly appreciate, inasmuch as he was in a better condition than we are for considering the circumstances.

The appellant cites the case of *Domínguez* v. *Porto Rico Railway, Light & Power Co., supra,* in an attempt to show that the chauffeur was bound to stop his automobile so as to look and listen, but the facts of this case being different the appellant's conclusion can not be applied. In the case cited there were no bars, a fact which the chauffeur knew, but in this case the fact was the reverse and the general rule of "looking and listening" can not be applied so strictly, inasmuch as the chauffeur was excused from

the usual obligation imposed by that rule because of the implied invitation extended to him by the fact that the bars were not down.

"Thus, where the gates at a railroad crossing are as a rule closed when trains are near, the fact that they are open dispenses with the usual obligation to look and listen." 1 Shearman & Redfield's Law of Negligence, 135.

Moreover, the trial court found that this obligation was complied with and the conflict in the evidence on this point having been adjusted in favor of the plaintiff, we are not in a position to interfere, considering the other special circumstances of the present case.

Nor does it appear that in the absence of a proper operation of the barriers by the defendant, which would of itself have prevented the accident, the defendant took other precautions to avoid it, especially considering that the accident occurred while the locomotive was running backwards in crossing the road. This was another incident in this case. The adoption of more strict measures of precaution to give warning of the approach of the locomotive was required by reason of the fact that the locomotive was running backwards.

"This rule requiring the adoption of extraordinary means to signal the approach of trains at peculiarly dangerous crossings also has frequent illustration in cases where trains or engines have been backed over crossings. Thus a railroad company has been held grossly negligent in backing a train across a much frequented crossing without a brakeman at the rear end as a lookout, and ready, in case of danger, to apply the brakes, and thus prevent collision or accident." 22 R. C. L., 990-991.

If we add that fact to the others already discussed we must conclude that the defendant is chargeable with the full responsibility of gross negligence in connection with the safety to which the plaintiff was entitled in crossing a public highway with its trains or locomotives.

Besides, to make the situation still more clear and leave no doubt or excuse in connection with the other warnings that the appellant says the operator of the barriers made, the opinion of this Supreme Court in *Domínguez* v. *Porto Rico Railway, Light & Power Co., supra,* is conclusive and reads in part as follows:

"Applying these principles to the case at bar, we must conclude that the person employed as gate-keeper by the defendant corporation to give warning to passers-by of the approach of trains by means of a flag is not an adequate protective device similar or equal to the chain or gate required by law, inasmuch as it does not obstruct or prevent physically an entrance to the track. Therefore, on the date on which the accident occurred the defendant corporation had not complied with the requirements imposed by law of placing chains, gates or other suitable protective devices at the crossing for the protection of passers-by, which failure to comply with the statutory provision constitutes negligence *per se.* 33 Cyc., 968, and cases cited in note 8."

The appellant insists that the chauffeur contributed to the cause of the accident and alleges that the fact that he covered the distance from San Juan to Río Piedras in thirty minutes shows that he was driving at the rate of more than 40 miles an hour. The fact that the distance between the two cities is eight miles destroys the exaggerated argument of the appellant on this point. Aside from this and taking as a basis the fact that the proximate cause of the accident was the failure to lower the bars in order to stop the traffic, which of itself would have avoided all danger, the speed of the automobile would be a matter of importance if it had been shown that its speed was quite unusual and that the defendant, having clearly omitted compliance with the statutory duty of lowering the bars, had made efforts by some other means or signals to give a warning of the danger; but we find nothing that could support a conclusion that might perhaps imply contributory negligence on the

part of the chauffeur who was driving the car. But, as-
suming for the sake of argument only that the chauffeur
was negligent in some manner, his negligence could not be
charged to the plaintiff, who only instructed the driver to
transport her to her residence in Yabucoa, and it did not
appear by direct or circumstantial evidence that she had
any authority or control over the chauffeur.

This question was considered in the case of *Domínguez*
v. *Porto Rico Railway, Light & Power Co., supra,* and,
adopting the same theory, this court said:

"While the general rule established by English decisions was
that the negligence of the driver would be attributed to a pas-
senger in cases of accidents caused by the negligence of a third
party to which the negligence of the driver contributed and this
doctrine was followed in a few English and American decisions,
said decisions were expressly rejected later in England and disap-
proved by the Supreme Court of the United States in the case of
*Little* v. *Hackett*, 116 U. S., 366, 6 S. Ct., 391, 29 L. ed., 652, the
general rule now being that the negligence of the driver is not
attributable to the passenger when the latter has no control over
said driver."

"The doctrine prevails in a few states that the contributory
negligence of the driver of a private conveyance is imputable to
a person voluntarily riding with him. But the general rule is that
the negligence of the driver of a vehicle is not to be imputed to
an occupant thereof who is injured at a crossing through the com-
bined negligence of the driver and the railroad company when
such occupant is without fault and has no control over the driver.
And the law almost universally now recognized is that when one
accepts an invitation to ride in the vehicle of another, without
any authority or purpose to direct or control the driver or the
movements of the team, and without any reason to doubt the
competency of the driver, the contributory negligence of the owner
or driver of the conveyance will not be imputed to the guest or
passenger, so as to bar him of the right to recover damages from a
railroad company whose negligence occasions injury to him at a
crossing while he is so riding. This rule has been applied in a
number of cases involving the corresponding relation between the

driver of an automobile and an occupant having no control over him. The rule is not confined to cases of gratuitous transportation, but has been applied where a conveyance is hired, and the passenger exercises no further control over the driver than to direct him to the place to which he wishes to be taken. Nor is any distinction made between private and public vehicles, such as street cars and stages.'' 22 R. C. L. 1047–1048.

Errors are also assigned in the failure to apply fully section 1804 of the Civil Code and in the allowance of an excessive amount of damages.

The last subdivision of section 1804, *supra,* provides that the liability referred to in the said section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage. The defendant offered testimony tending to show the competency of its employees and the manner in which orders were given for the operation of the barriers, but a preponderance of the evidence showed that the barriers were not closed when they should have been in order to give warning of danger and to avoid accident, and if the fault was due to some defect in the mechanism which made their prompt operation impossible, it was not shown that such precautions were taken as the least diligent father of a family would take in such circumstances, for, on the contrary, the fact that the locomotive was running backwards and that this was one of the circumstances under which the accident occurred showed more than mere negligence, for if we were to divide negligence into grades we should call that of this case negligence in its highest degree.

As regards the damages suffered by the plaintiff, it was proved that as a result of the collision she received several injuries that required medical attention and was confined to her bed for several days. The first means an expense besides the cost of the medicines used, and the second a loss

of time which has its equivalent in money. Furthermore, in an accident of this kind nervous shocks are generally suffered, the result of which nobody can foresee. For that reason mental anguish and physical suffering are elements that jurisprudence has steadfastly recognized, giving them a positive value in determining the amount of damages. In any event we have reached the conclusion that the $1,000 allowed by the trial court to the plaintiff is reasonable and adequate, considering all of the circumstances of the case.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.