ARTHUR A. ISBELL *vs.* PITTSFIELD ELECTRIC STREET
RAILWAY COMPANY.

Berkshire.    September 10, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence. Street Railway. Carrier,* Of passengers. *Practice, Civil,* Conduct
of trial.

At the trial of an action for personal injuries to the plaintiff while a passenger on
an electric car of the defendant, there was evidence which tended to show that,
after the plaintiff became a passenger, the air brakes and the electric controller
at the front of the car ceased to work and that the car was operated by the use
of hand brakes and the controller at the rear, that the plaintiff, learning of this
condition, talked of changing to a different car, but that, upon his protesting to
the conductor, he was assured by him that the car was safe and would reach its
destination on time, that the car, in going down a hill at the foot of which was
a sharp curve of which the plaintiff knew, ran at a very rapid and dangerous
rate of speed, and that the plaintiff, having in mind the hill and the curve,
became alarmed and, leaving his seat, stood in the doorway, whence he thought
he could jump if occasion demanded it. While he was so standing, the car
reached the curve and gave a lurch, and the sliding door closed on the plaintiff's
hand, causing the injury. *Held,* that there was evidence warranting a finding
of due care on the part of the plaintiff and of negligence on the part of the
defendant; and that, under the circumstances, the plaintiff could not be said
as a matter of law to have assumed the risk of his injury by leaving his seat and
standing in the doorway.

Where a passenger on an electric car learns that its condition is defective and has
an opportunity to leave it and to take a different car which will reach his desti-
nation at a time suitable to him, but, being assured by the conductor that the car
is safe and will reach the destination on time, remains thereon, he does not as-
sume the risk of an injury which is caused by the defective condition of the car.

At the trial of an action for personal injuries received by the plaintiff while a pas-
senger on an electric car of the defendant, an electric street railway company,
the presiding judge charged the jury: "The defendant has the duties of a
common carrier. Those duties involve the exercise by it of the utmost diligence
consistent with the transaction of the business of an electric street railway com-
pany. . . . And I further believe that, when a common carrier undertakes to
carry a person, it undertakes to carry him safely, and he does not assume a risk
by the fact that he knows that there is some defect which might cause an acci-
dent. By inviting a person to become a passenger, the obligation arises on the
part of the defendant to carry out the duties of a common carrier." *Held,* that
the instruction could not have been understood by the jury as meaning that the
defendant was held to the liability of an insurer, but only as stating generally
the obligation of a common carrier to transport its passengers safely, from which
it was not excused by the fact that a passenger knew of a defect which might
cause an accident.

TORT for personal injuries received by the plaintiff while a passenger on an electric car of the defendant. Writ in the Superior Court for the county of Berkshire dated April 5, 1905.

At the trial, which was before *Dana,* J., there was uncontradicted evidence that the plaintiff became a passenger at Adams to go to Pittsfield. During the journey and before the accident to the plaintiff, the air brakes and the electric controller in the front of the car ceased to work, and the car was operated by the use of hand brakes and a controller at the rear. After passing Cheshire Village, the plaintiff thought of and talked of changing cars because he feared the car was unsafe, and because he wanted to get to Pittsfield by a certain time, and he protested several times to the conductor that the car was unsafe but was told by the defendant's agents that the car was safe. The plaintiff's evidence tended to prove that, as the car went down Brennan Hill in Lanesborough, it was moving at a very rapid and dangerous rate of speed, and was swaying to such an extent that he got up from his seat and went and stood in the rear doorway so that he could jump if the car overturned and that, while he was so standing, the swaying of the car as it struck a sharp curve at the bottom of the hill caused the sliding door to close upon his hand and his injury resulted. It was uncontroverted that there were empty seats in the car and that the plaintiff knew of the hill and the curve and had them in mind when he left his seat. The defendant's evidence tended to show that the way in which the car was operated was safe, that it was at all times under control, that the speed was reasonable and that no one was frightened.

At the close of the evidence, the defendant requested the presiding judge to rule, in substance, that in riding in the car at all, instead of changing to a different one, after he knew of the defective apparatus, the plaintiff assumed the risk of the injury which he received; that, in leaving his seat and occupying the more exposed position in the doorway, with full knowledge of the danger, the plaintiff assumed the risk of the injury which he received, and could not recover; that, "if the plaintiff was frightened in the descent of the hill by conditions which he foresaw and considered in advance, he was not justified in leaving his seat, which proved to be a place of safety, and taking a more

exposed position, which proved to be the sole cause of his injury," and that on all the evidence the plaintiff could not recover. The presiding judge refused the requests except as his charge covered them. The material portions of the charge to the jury were as follows:

" The defendant is an electric street railway company, and as such is a common carrier, and has the duties of a common carrier. Those duties involve the exercise by the company of the utmost diligence consistent with the transaction of the business of an electric street railway company. That diligence undoubtedly will be admitted to include the furnishing of proper cars, and safe transportation of passengers, so far as relates to any act of omission or commission by the company or any of its servants. . . . It is for you to say upon the whole evidence, taking the testimony of the plaintiff and the testimony of the defendant, whether the car was operated at a reasonable rate of speed. . . .

" I shall further instruct you that the company had no right to run that car at such a rate of speed as to cause a reasonable man, a man of ordinary intelligence, and ordinary judgment, and ordinary nerve, to believe that he was in peril of his life, and that, if the car was so run, and the plaintiff, being a reasonable man, had reasonable grounds for believing that his life was in peril, then he is not to be held to that strict accountability of conduct that he would be held to, if he had not been placed in that situation by the defendant company. In other words, if you were to find that the plaintiff was guilty of contributory negligence in starting as he did, and putting on his coat, and then going to the door, a place where he might have got his hand injured, and might have known that he would get it injured, if you find that that would have been contributory negligence under ordinary circumstances, yet that is not to defeat the action, if you are of the opinion that the car was run at an improper speed. I mean by improper speed at such a speed as would cause a reasonable man to believe that there was considerable danger of his life. . . . And I further believe, that, when a common carrier undertakes to carry a person, it undertakes to carry him safely, and he does not assume a risk by the fact that he knows that there is some defect which might cause an accident. By inviting a person to become a passenger the obliga-

tions arise on the part of the defendant company to carry out the duties of a common carrier."

The defendant excepted to the refusal of the presiding judge to rule as it requested, and to the last two sentences of the charge.

There was a verdict for the plaintiff.

The case was submitted on briefs.

*W. F. Hawkins, W. Turtle & W. T. Casey,* for the defendant.

*M. B. Warner,* for the plaintiff.

MORTON, J.   This is an action to recover for personal injuries received by the plaintiff while being carried as a passenger in a car operated by the defendant. There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the presiding judge to give certain rulings that were asked for, and to certain instructions that were given.

There clearly was evidence warranting a finding that the car was out of repair and was run at an excessive rate of speed; in other words, of negligence on the part of the defendant. The principal contention of the defendant is that the plaintiff was not himself in the exercise of due care and assumed the risk of injury from the want of repair and the manner in which the car was operated, and that the presiding judge was in error in instructing the jury as he did "that, when a common carrier undertakes to carry a person, it undertakes to carry him safely, and he does not assume a risk by the fact that he knows that there is some defect which might cause an accident. By inviting a person to become a passenger the obligations arise on the part of the defendant company to carry out the duties of a common carrier."

The defendant contends that the plaintiff assumed the risk because he continued to ride in the car after he discovered that it was out of repair and was run at a dangerous rate of speed, instead of getting off and taking another car. But there was evidence tending to show that the conductor assured him that the car was safe, and the jury could not, therefore, properly have been instructed, as the defendant in effect requested that they should be, that the plaintiff assumed the risk. Moreover the defendant could not thus throw upon the plaintiff the burden of its own negligence, but was bound as the presiding judge in

substance instructed the jury to exercise the highest degree of care consistent with the nature of its business to carry him safely.

Whether the plaintiff was in the exercise of due care in leaving his seat and going to the rear platform was, under the circumstances which the evidence tended to show, clearly a question for the jury, and we see no error in the instructions or refusals to instruct in relation to that matter.

The instruction that was excepted to and which is quoted above could not have been understood, we think, as meaning that the defendant was held to the liability of an insurer in respect to the safety of its passengers, but only as stating generally the obligation of a common carrier to transport its passenger safely, and that it was not excused from the performance of that duty by reason of the fact that the passenger knew of a defect which might cause an accident. The presiding judge had previously instructed the jury, as already observed, that the defendant was bound to exercise the highest degree of care consistent with the nature of its business. This distinctly negatived the idea that its liability was that of an insurer.

We see no error in the manner in which the presiding judge dealt with the case.

*Exceptions overruled.*