CASE 33.—ACTION BY S. I. ARMSTRONG AGAINST THE LOUISVILLE & NASHVILLE R. R. CO., FOR DAM. AGES FOR PERSONAL INJURIES.—November 27.

# Louisville & N. R. R. Co. v. Armstrong

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff, defendant appeals—Reversed.

1. Railroads—Frightening Animals—Injuries—Estoppel—Plea.—In an action for injuries to plaintiff by his team becoming frightened at the carcass of a horse lying on defendant railroad company's right of way, near a public road crossing, a plea of estoppel alleging that plaintiff, though aware of the presence of the carcass on or near the highway and within the corporate limits of a town, failed for several hours prior to the accident to make it known to the town authorities or request its removal, was demurrable, as the facts did not constitute an estoppel, but were provable to establish assumed risk.

2. Same—Negligence—Petition.—A petition for injuries to plaintiff by his team becoming frightened at the carcass of a horse lying on defendant railroad company's right of way near a public crossing in a town was fatally defective, where it failed to allege that defendant knew of the presence of the carcass on defendant's right of way, or that the carcass had remained there an unreasonable length of time, or long enough for defendant to have removed it before plaintiff was injured.

3. Same—Notice.—Where a petition for injuries to plaintiff by his horses becoming frightened by the carcass of a horse on defendant's right of way near a road crossing, alleged that the horse was killed by one of defendant's trains, such allegation was not a sufficient statement that defendant's

employes knew that the horse was struck, or that it died from the effects of the collision.

4. Pleading—Defects—Cure by Answer.—Where a petition for injuries to plaintiff by his horses becoming frightened at the carcass of a horse lying on defendant railroad's right of way was defective for failure to charge that defendant knew of the presence of the carcass, or that it had remained there an unreasonable time, or long enough for defendant to have removed it, such defect was not cured by an answer containing only a traverse and a plea of contributory negligence.

5. Railroads — Crossing Accident — Proximate Cause. — Where plaintiff's horses were frightened at the carcass of a horse lying on defendant railroad company's right of way near a road, the killing of the horse by one of defendant's trains was not the proximate cause of plaintiff's injuries resulting from the fright of his team.

6. Same—Care Required.—Where plaintiff was injured by his horses becoming frightened at the carcass of a horse lying on defendant's right of way near a highway, plaintiff, in order to recover, was required to prove that the carcass was on defendant's right of way in close proximity to the highway, and that defendant knew, or by the use of ordinary care could have known, of its presence within such time as would reasonably have enabled it to have removed the carcass before plaintiff received his injuries.

7. Same—Notice—Negligence.—Where the fact that a horse had been killed and was lying on defendant railroad company's right of way near a road was not communicated to any employe of the railroad company until less than an hour before plaintiff was injured by his horses becoming frightened at such object, which was removed by defendant's section foreman within two hours thereafter, the removal was made within a reasonable time after notice.

8. Same.—Where it was not shown that a horse alleged to have been killed by one of defendant's trains was lying wholly on defendant's right of way near a highway, or that its situation was such as to make it apparent to train operatives that it was an obstruction requiring removal because of its proximity to the crossing, or that it was part of the duty of train operatives to inspect dead stock on the right of way and communicate the facts to other agents of the company, the fact that the crews of two or more freight trains and a passenger train passed the carcass during the morning before its removal and before plaintiff was injured by his horses

Louisville & N. R. R. Co. v. Armstrong.

becoming frightened at the same, was insufficient to charge defendant with notice of its presence.

9.  Same—Contributory Negligence.—Where plaintiff and his companion, though their horses were badly frightened at the carcass of a horse killed by a train and lying on the railroad right of way near the highway, compelled them to pass, and, on returning with a load, or whipped the horses in order to induce them to pass, whereupon they backed the wagon off a fill and caused palintiff's injuries, plaintiff was negligent as a matter of law, and could not recover.

10.  Negligence—Driver of Vehicle—Imputed Negligence.—Where plaintiff and his companion were engaged in hauling fodder with a team, and plaintiff was injured while his companion was endeavoring to force the horses past the ·carcass of a horse on defendant railroad company's right of way near a highway, at which the horses were frightened, the relation of master and servant, or joint undertakers, existed between plaintiff and his companion, so that plaintiff was chargeable with the negligence of the latter.

CHARLES R. McDOWELL for appellant.

BENJAMIN D. WARFIELD and CHENAULT HUGELY of counsel.


We ask a reversal of this case for the following reasons:

First, that the court erred in sustaining a demurrer to the third paragraph of the defendant's answer.

Second, that the court erred in overruling the defendant's demurrer to plaintiff's petition and petition as amended.

Third, that the court erred in overruling defendant's motion for a peremptory instruction, (1) because there was no proof that the dead animal was on the highway or right of way of the road an unreasonable length of time; (2) because there was no proof that it remained an unreasonable length of time after notice to the defendant; (3) because there was no notice to defendant until after the accident happened, and the attempts to prove notice, and the irrelevant testimony admitted by the court below thereunder, were all highly prejudicial to the defendant; (4) because appellee's negligence was so great in casting himself upon the obstruction after notice that it existed, as to preclude any recovery, and to make him guilty of contributory negligence as a matter of law.

vol. 127—24

'AUTHORITIES CITED.

Knaur v. City of Louisville, 20 Ky. Law Rep. 193, 41 L. R. A. 219; Ky. Stats., section, 3709; 4 Paige, 126; 1 Rorer, Railroads, 669; Beach on Contributory Negligence, section 9; 24 Wis., 157; Hazelrigg v. City of Frankfort, 92 S. W., 584; 2 Hill, 451; City of Danville v. Robinson, 39 S. E. 122 (Va.); 4 Md., 231; J. T. & K. W. R. Co. v. Pen. L. Trans. & Mfg. Co., 17 L. R. A., 63; 6 Ga., 44; Story, Agency, section 140; 13 Ves., Jr., 114; 1 Parson's Cont., 77; Thompson's Comm. Negligence, vol. 5, section 6242; Bell v. Henderson, 24 Ky. Law Rep., 2434; Elliot, Roads and Streets, section 636; Pittsburg Sou. R. Co. v. Taylor, 104 Pa. St., 306; Bishop, Non-Contract Law, sections 1012-13; City of Danville v. Robinson, 39 S. E., 122.

JOHN R. VORIS for appellee.

ROBERT HARDING and JOHN W RAWLINGS of counsel.

We contend that the petition unquestionably sets forth a cause of action against appellant for damages for the injuries received, and that the proof clearly shows that such injuries were received by him as the direct result of the negligence of the railroad company in creating and permitting this nuisance at this place; that this dead horse was an object, "the obvious tendency of which was to frighten ordinarily gentle horses;" that the company knew, or, by the exercise of ordinary care, could have known, of its existence there in time to have removed it and prevented the injury to appellee; that it negligently failed to do so; that the negligence, if any, of the driver Lewis, can not be imputed to appellee, or if so, that neither he nor appellee was guilty of such negligence at the time as to preclude appellee's recovering for the injuries received; that all questions of fact were submitted to the jury under instruction far more favorable to appellant than it was entitled to, instruction No. 4 being especially erroneous and highly prejudicial to appellee, and that the injuries received justified, in fact, a much larger verdict than that given by the jury, and the jury, tne lawful triers of the facts, having, under such instructions, found for appellee, we respectfully insist that this court should, and ask that it do, affirm the judgment of the lower court.

Louisville & N. R. R. Co. v. Armstrong.

### AUTHORITIES CITED.

Knauer v. City of Louisville, 45 S. W., 510; L. & N. R. Co v. Wade, 11 Ky. Law Rep., 904; 2 Thomp. Neg., sections 1916, 1918; Baxter v. Chicago, R. I. & T. Ry. Co., 87 Iowa 488, 54 N. W. Rep. 350; Morse v. Town of Richmond, 98 Am. Dec., 600: Cahill v. Cin., etc., Ry. Co., 92 Ky., 345; Little v. Hackett, 116 U. S. Rep., 366; Sluder v. St. Louis Co., 88 S. W., 648; 5 Thomp. Neg., sections 6255, 6245, 6263, 6266; Duvall v. Atl. Coast Line R. R. Co., 101 Am. St. Rep., 830; N. Y., Lake Erie, etc., Ry. Co. v. Steinbrenner, 54 Am. Rep., 126; Robinson v. The N. Y. C., etc., R. R. Co., 23 Am. Rep., 1; Masterson v. N. Y., etc., R. R. Co., 38 Am. Rep., 510; Carlisle v. Brisbane, 57 Am. Rep., 483; City of Louisville v. Brewer's Admr., 72 S. W., 9; City of Maysville v. Guilfoyle, 62 S. W., 493; City of Brownsvile v. Arbuckle, 99 S. W., 239; City of Carlisle v. Secrest, 75 S. W. 268, 25 Ky. Law Rep. 336; City of Lancaster v. Walter, 80 S. W. 189, 25 Ky. Law Rep. 2189; Modern Law of Municipal Corporations, section 1282.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Louisville & Nashville Railroad Company, seeks the reversal of a judgment of the Boyle circuit court entered against it upon a verdict awarding appellee, S. L. Armstrong, $1,000 damages for injuries claimed to have been caused by its alleged negligence in suffering a dead horse to lie and remain upon its right of way near a public road crossing its track at Junction City, at which a pair of horses, driven to a wagon by appellee and John Lewis, became so frightened as to overturn the wagon on an embankment and violently throw the former to the ground, thereby producing the injuries complained of, which are of a serious and probably permanent character. It was alleged in the petition and amended petition that the horse, at whose carcass those driven by appellee and Lewis became frightened, was struck and killed by one of appellant's

trains, and thereby thrown "upon said defendant's right of way at and near to and along the edge of said public road, street, and highway, * * * and the defendant negligently and carelessly suffered and permitted said dead horse to be and remain at said point, and the same was calculated to and did alarm and frighten horses being driven and ridden over said roadway by the public," that the dead horse "was a frightful looking object," and did frighten the two horses driven by himself and Lewis, causing them to back the wagon off a fill and turn it over, thereby inflicting the injuries complained of, and that the two horses were "gentle and kind horses" at the time of the accident. Appellant filed a demurrer to the petition, which was overruled, and to this ruling it reserved an exception, following which it filed an answer containing three grounds of defense; the first paragraph containing a traverse, the second a plea of contributory negligence, and the third a plea of estoppel based upon the alleged facts that the dead horse was lying upon the public highway and within the limits of Junction City, which is an incorporated town of the sixth class, possessed of such officers as are provided for such towns, and that appellee, though aware of the presence of the dead horse on or near the public highway and within the corporate limits of the town, several hours before the accident resulting in his injuries, failed to make it known to the town authorities or request its removal. The lower court sustained a demurrer to the third paragraph of the answer, and the affirmative matter of the first and second paragraphs was denied by reply.

We think the demurrer to the third paragraph of the answer was properly sustained, for what was pleaded therein did not constitute an estoppel, but

could have been and was introduced on the trial as evidence conducing to prove appellee's knowledge of the presence of the dead animal at the place of the accident several hours before its occurrence, and that with such knowledge he took the risk of driving by the dead horse, instead of requesting of appellant or the authorities of Junction City its removal. We are further of opinion that the court erred in overruling appellant's demurrer to the petition. The petition does not manifest a cause of action, for it neither alleges that appellant knew of the presence of the dead horse upon its right of way, or that it remained there an unreasonable length of time, or long enough for appellant to have removed it before appellee was injured. It is true it is therein alleged, in substance, that the horse was killed by one of appellant's trains; but, conceding this to be true, it does not necessarily follow that those in charge of the train knew it struck the horse, or that it died from the effects of the collision. The collision doubtless occurred at night, or before daylight in the morning, and it may be that neither the engineer nor fireman saw or realized it, and the fact that the horse was knocked from the track, instead of being run over by the train, would seem to indicate that little, if any, jar to the engine resulted from the collision. As what was left of appellant's answer, after the third paragraph went out on demurrer, contains only a traverse and plea of contributory negligence, it cannot be said to have cured the defects of the petition.

The killing of the horse by one of appellant's trains could not have been the proximate cause of appellee's injuries; but if, after killing the horse, appellant knowingly permitted it to remain upon its right of way for an unreasonable length of time, and it was

so near the public road as to frighten the horses of
persons driving or riding upon the public road, the
dead animal would, in that event, unquestionably
become a nuisance; and this would also be true if the
horse were to die upon appellant's right of way from
natural causes, instead of being killed by the train.
"A railroad company is no more privileged than a
natural person is to deposit or leave something on
or near the public highway which is very unusual,
and the obvious tendency of which is to frighten
ordinarily gentle horses, especially where it is not
necessary for the proper operation of the railroad
to do so.  For example, a railway company was held
liable for personal injuries suffered by one who was
thrown from a wagon because the horse became
frightened at the dead body of a steer negligently
removed by railway employes from the railway track,
where it was killed, to the side of the highway, where
it would not be seen by horses until they had nearly
reached it." Thompson on Negligence, vol. 2, section
1916; L. & N. R. R. Co. v. Wade, 89 Ky. 255, 11 Ky.
Law Rep. 436, 12 S. W. 279.  It is apparent, therefore,
that, in order to recover of appellant for the injuries
he sustained, it was incumbent upon appellee to prove
that the dead horse in question was upon its right
of way in close proximity to the public road, and that
it knew, or by the use of ordinary care could have
known, of the presence of the animal there within
such time as would reasonably have enabled it to
remove the carcass before appellee received his in-
juries, and, moreover, that appellee's injuries did not
result from his own failure to use ordinary care.  In
the case of Hazelrigg v. Board of Council of the City
of Frankfort (Ky.) 92 S. W. 584, 29 Ky. Law Rep. 207,
which was an action to recover for injuries resulting to

the occupant of a buggy from an obstruction in the street, it is said: "In order to render the city liable, it must be shown that it, by the exercise of ordinary care, could have known of the existence of the obstruction in the street and removed the danger. We cannot say that it is actionable negligence for the city to fail to discover in three hours an obstruction in one of its streets, caused by a lot of rock screenings being dumped there. There is no evidence that the city knew of the obstruction, and the bare fact that it had been there for three hours is not sufficient to charge it with liability." In the case at bar no witness saw the horse struck by one of appellant's trains; but, judging from the wounds upon it, we think it fairly inferable that such was the manner of its death. It is, however, certain from the evidence that his dead body was first discovered early on the morning of November 18, 1906, so his death must have occurred before daylight.

It also appears from the evidence that appellant's servants, intrusted with the work of maintaining the section of its railroad track embracing the place where the dead horse was found, reside a mile and a half east of that point, and that they were at work that day, beginning at an early hour of the morning, east of where they reside. Therefore they were not at or near the place where the horse was found on the morning of that day. The horse was seen by appellee and Lewis at 6:30 or 7 o'clock that morning, as they drove from Junction City out to a farm for a load of fodder belonging to the former. The horses attached to their wagon were then afraid of the dead horse, and were with difficulty driven by it. Although appellee and Lewis, after leaving the place where the dead horse was found, passed near the place of resi-

dence of some of the town authorities, they did not
mention to them, or any one, that there was a dead
horse near the crossing, and according to the entire
evidence that fact was never communicated to any
employe of appellant until 10:30 o.'clock on the morn-
ing of the day appellee was injured, which was less
than an hour prior to the accident; the station agent
at Junction City being then informed of it by one
McDonald. Upon receiving the information, the sta-
tion agent immediately notified appellant's section
foreman of it, and the latter by 12 o'clock, which was
as soon as he could reach the place with his force,
removed the dead animal. Appellee was allowed to
prove that two or more freight trains and a passenger
train passed the dead horse during the morning and
before its removal, from which it is argued that the
crews of these trains saw, or ought to have seen, the
horse, which was a sufficient notice to appellant. We
do not accept this view. It does not clearly appear
from the evidence that the horse was wholly on appel-
lant's right of way, or that its situation was such as
to make it apparent to those in charge of the trains
that it was such an obstruction as required removal
on account of its proximity to the crossing. It was
not made to appear from the evidence that it was the
duty of those in charge of passing trains to stop them
to inspect such dead stock as might be seen on appel-
lant's right of way, or to communicate to station or
other agents of appellant such facts; but it was shown
by the evidence that it is the duty of the section fore-
man, upon being notified of the presence of dead stock
on appellant's right of way, to remove it, and this
duty with respect to the horse in question was per-
formed by the section foreman within a reasonable
time after notice of its presence on the right of way

was received from the station agent, who, as before said, communicated it promptly after the fact was made known to him.

With respect to appellee's conduct on the occasion of receiving his injuries, it may be said that the evidence showed him to be guilty of contributory negligence. He had seen the dead horse three or four hours before he was injured. In then approaching it the horses behind which he was riding were frightened and had to be forced to pass it, and when he returned with the load of fodder upon the wagon the dead horse was where it was when he had last seen it, and could be seen by appellee and Lewis several hundred yards before reaching it. In fact both admit that they saw the horse some distance before getting to it, yet under the circumstances they determined to remain upon the wagon and force the horses to pass the frightful object. In the effort to do so the horses became badly frightened and. refused to proceed, whereupon Lewis commenced to whip them, which increased their fright and caused them to back the wagon off the fill, overturn it, and cause appellee's injuries. In the language of one of the law books, one cannot "cast himself" upon a plainly visible, and to him well known and dangerous, obstruction in or near the highway, though placed or allowed to remain there by the fault of another, and, if injured thereby, be allowed to recover. Such a danger as confronted appellee was not akin to dangerous defects or obstructions in a street or highway, which, though visible at times, are liable to be overlooked or forgotten by the passing pedestrian or traveler; but it was a plainly discernible obstruction, and danger prominently visible, the presence of which, as well as the fact that the horses were afraid of it, was well known

to him.   In attempting to drive by it in the manner adopted, he and Lewis must be presumed to have understood the risk they ran and the probable consequences.   These facts being admitted, the court should have decided as a matter of law that the presence of the dead horse on appellant's right of way was not the proximate cause of appellee's injuries, but that they were caused by his own negligence.   Although Lewis was the driver, it is, we think, reasonably plain from the evidence that he either sustained the relation of servant to appellee, or they were joint undertakers, in the enterprise of handling fodder, and the negligence of either should be imputed to the other.

In our view of the case a peremptory instruction in favor of appellant should have been given, because the petition failed to state a cause of action, the evidence failed to show that appellant knew, or by the use of ordinary care could have known, of the presence of the horse on its right of way in time to have removed it before appellant was injured, and, finally, it was patent from the evidence that appellee's injuries were caused by his own negligence.   This conclusion makes it unnecessary for us to consider the instructions given.

For the reasons indicated, the judgment is reversed for a new trial, and for further proceedings consistent with the opinion.