## Adams v. Hilton.

(Decided Dec. 3, 1937.)

ANDREW E. AUXIER and CHARLES W. MORRIS for appellant.
FRENCH HAWK and BRUCE & BULLITT for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

There were four cases tried together below but brought here on four separate appeals. The defendants below, in each case, were Sam Adams, owner of a taxicab business, and his son Chester, who at the time of the accident was driving the car in which the four plaintiffs, Hilton, Willis, Newman, and Croft, were passengers.

Sam Adams, the owner of the taxi business at Jenkins, had complied with the automobile laws relating to public carriers, including the carrying of liability insurance. On November 3, 1935, there was a football game at Blackey between the Jenkins school, and another team. The towns are about thirty-four miles distant from each other. The passengers, ranging in age from nineteen to twenty-five, were employees of a coal company at Jenkins. About noon that day they met in a poolroom in Jenkins and decided to attend the game. They went to the taxi stand and made arrangements with Chester, who was in charge of his father's business, and each paid him $1 for the round trip. On the way to Blackey there were two other passengers, Elkins and Griffey, the latter leaving the taxi before reaching Blackey; Elkins going on to the game, but not returning. When the party reached the ball park, Chester drove the taxi into the grounds and the boys separated.

On the return trip the taxi had gone about ten miles, when in rounding a curve down a mountain side toward Sand Lick Creek, being approached by another car, Chester pulled it over upon the shoulder, and in trying to get back on the pavement lost control; the car skidded into the creek, resulting in injuries to the driver and each of the four passengers.

Each appellee (in the four appeals) filed separate petition, the allegations being similar, except as to the nature and extent of injury, and amount sought to be recovered. Each petition alleged the payment and acceptance of fares, and charged that the taxi was operated in a grossly negligent manner; at a rapid and careless rate of speed, without regard to the traffic laws, causing the taxi to wreck, resulting in their several injuries.

The proceedings below were somewhat different from the usual course in such cases. Appellant's insurer tendered a petition to be made party, setting out the conditions of its insurance contract, alleging that it had presented to appellant an answer, setting up bona fide defenses to each of the four actions. The insurer alleged that it had made such investigation of the circumstances attending the accident as authorized defense, and had developed and would rely upon proof sufficient to bulwark the defense, pleading also the insolvency of appellant. Adams refused to sign or verify the answer because it contained, among other defenses, the allegation that on the return trip the occupants of the car were engaged in a common adventure. The court permitted the filing of the petition containing the answer, which an order shows was "to be treated as the answer of Sam Adams and on its own behalf." The answer traversing the allegations of the petition, contained the affirmative pleas of "joint enterprise," and contributory negligence. Replies denied the affirmative allegations of the answer. A rejoinder completed the issues.

At the close of the evidence appellant's motion for a directed verdict was overruled. Instructions were given and the jury returned separate verdicts in each case as follows: Gordon Hilton, $1,300; George Newman, $2,500; Milford Croft, $2,000; Emory Willis, $1,800. Plaintiff in each case made motion for a judgment against the insurer, which the court overruled, since the policy was so written that the insurer's liability only accrued sixty days after judgment or affirmance on ap-

peal. Judgments were rendered against Sam and Chester Adams upon each verdict, and appeals granted.

Such of the facts as are related above are not in dispute; however, there is dispute as to what occurred during the latter part of the ball game. As we read the testimony for appellees, there was no whisky carried by the crowd on the entire trip. They say that none of them drank on the trip to Blackey. All, save Newman, say that they had nothing to drink on the entire trip. They are in accord in saying that the driver had nothing to drink. Some of the appellees say they left the ball park shortly before the game was ended because the Jenkins team was so far ahead that the game had lost interest to them; some say that one of the passengers and the taxi driver were desirous of getting back to Jenkins.

Persons in charge of the park gate testify to circumstances which tend to indicate that there had been some consumption of liquor on the trip to Blackey. Caudill, a deputy sheriff, and Miller, a constable, answering a call to the ball park near the close of the game, found Elkins cursing and using bad language, and "Newman and others ganging around them." One officer commanded arrest; Newman defied them and Miller directed Caudill to take him while he looked after Elkins. At this point Newman ran; Miller fired a shot at him and commanded him to stop, which he did. He then took Newman up to where Elkins was "at the mouth of the lane." About this time a car came up rather rapidly; slowed down near Newman, and he got in and it hurried away. Someone said this was Chester Adams' car.

The officer says he saw no liquor, but the "Elkins boy and the other boys were pretty drunk." Caudill testified substantially as did his fellow officer. On rebuttal appellees all testified that none of them were drunk, and that Adams was sober. They did not testify as to the state of sobriety or insobriety of Elkins. Dr. Bach, who gave the entire party first aid, said that when he saw them at the hospital "some of them were rather boisterous, but I can't recall which of the number that was. * * * I was under the impression they had been drinking."

As to the departure from the ball park, Newman says he saw no disturbance; they had decided to leave

and had so told Chester, who then drove out of the ball park. Some of the boys had already gotten in the car, and "down near the entrance," while the car was standing still, Newman got in. Croft says he saw no trouble; that they left to get in front of the crowd. "I got in the car and we pulled off to the other side of the ball park, and Willis got in and Hilton got in a little further, and a little further Newman got in, * * * while the car was at a standstill." Willis says he saw Croft and Chester get in the car; that the car backed up and started out, and "I walked out down the road and got in. We went outside and picked up Hilton." Newman then went farther up the road and was the last to get in.

As to what happened after the start of the taxi toward Jenkins, appellees testified that at some point in the road, not exactly identified, but before reaching the place of the accident, Chester had been driving at a moderate rate of speed, but nearing the point of the accident he increased his speed to between 50 or 60 miles per hour. Some of the passengers warned him to slow down or he would kill them all, to which he responded that it would be a long time before he caused any of them to be hurt. It is shown that most, if not all of them, had ridden as passengers with Chester prior to this trip, and considered him a safe driver.

Newman does not testify clearly as to where the alleged excessive speed began. Croft says the speed was increased to 53 or 54 miles "about 300 yards from the point of the accident." Hilton says that just before the accident he heard one of the boys ask Chester to slow down; that two boys, who were standing beside a motorcycle, flagged the taxi down, and one of the boys borrowed some sort of tool to make repairs; "I told them we told Chester to slow down or he would kill us, and they told Chester to slow down, and Chester said, 'I have been driving a car for a good long time, and I will take care of these boys.'" This witness says Chester had been making from 25 to 30 miles over the rough road and when he got to the hard surface road he commenced to pick up speed. From the facts as detailed we are unable to learn just how far the taxi was from the point of accident when these suggestions for slower driving were made. The proof, and this relates particularly to Hilton's case, does not show that any suggestion of slower driving was made after the taxi stopped

to render aid, a short distance from the point of accident.

It is urged that the court improperly failed to instruct the jury on contributory negligence, based on the failure of the passengers to leave the car, and on imputed negligence; both having been offered in each case and refused by the court. The first, in addition to embracing the element of knowledge on the part of the passengers of an intoxicated condition of the driver, embodied the matter of negligence of the appellees in continuing to ride, if for other reason the driver was apparently negligent. An instruction, in so far as it related to the alleged intoxication of the driver, was given by the court in apt terms. The second offered instruction embodied the idea of negligence of the driver being imputed to the passengers, because all were engaged in a joint enterprise, and set out more definitely in No. 3.

The ''joint enterprise'' instruction was based on the theory that the entire crowd was seeking to escape arrest. Chesapeake & O. Ry. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10, is cited in support of the contention that there was a common purpose or joint enterprise. The facts in that case clearly differentiate it from the case here. To constitute ''joint enterprise'' as between the driver of an automobile and passengers, there must be not only community of interest, but also equal right, expressed or implied to direct and control the management and movement of the automobile; where it appears that a passenger does not have any voice in such control and management, there is lacking the elements of joint adventure. Dorris v. Stevens' Adm'r, 266 Ky. 602, 99 S. W. (2d) 755, 757.

In the Dorris Case it appeared there were two persons riding with appellant in a car driven by Mrs. Dorris. The injury was caused by the running of her car into a truck parked on the side of the road. Suit was filed seeking damages of Mrs. Dorris. Answer alleged a joint enterprise at the time of the accident, and appellant complained of the refusal of the court to give an instruction to the effect that if the decedents were engaged with her in a joint enterprise, then the negligence of any one of them should be imputed to the others. After referring to the case of Frisorger v. Shepse, 251 Mich. 121, 230 N. W. 926, wherein the rule asked to be applied in the Dorris Case was applied, this

court found that rule to be out of harmony with the great weight of authority, and said:

> "The general rule is that where the action is brought against a third party the negligence of one member of the joint enterprise will be imputed to the other. Chesapeake & O. Ry. Co. v. Harrell's Adm'r, 258 Ky. .650, 81 S. W. (2d) 10; Louisville & Nashville R. Co. v. Armstrong, 127 Ky. 367, 105 S. W. 473, 32 Ky. Law Rep. 252. But this rule does not apply when the action is brought by one member of the enterprise against another. Where the occupants of an automobile are jointly engaged in a common enterprise, and one of them is injured as the result of the negligence of the owner or operator of the automobile, using it within the scope of the enterprise, the doctrine of imputed negligence is inapplicable as between the parties."

We made particular reference to O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A. L. R. 436, and other cases holding as in the Dorris Case, and said:

> "The rule announced in these cases is sound, and has been adopted by practically every court which has passed upon the question. * * * Even in an action against a third party, it must be shown that the injured person had some right to control, manage, or direct the automobile."

So, if appellant's contention be correct as to the engagement in a common enterprise, the doctrine of imputed negligence is inapplicable, and the court did not err in refusing the instruction on that phase of the case.

On the question of contributory negligence (apparently inconsistent with the foregoing defense), appellant cites Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918C, 646, in which we wrote that a passenger who enters an automobile for a pleasure drive, knowing at the time that the driver is intoxicated to such an extent that he is unable to guide the car, is guilty of negligence and cannot recover if the incapacity of the driver was such as to directly contribute to the injury. In the case of Archer v. Bourne, 222 Ky. 268, 300 S. W. 604, 605, we held that a guest who got into a taxi at the invitation of a stranger known to have liquor, and who later, though protesting, failed to get out when the stranger insisted on giving the driver

liquor, was not entitled to recover, which she might have done had "the proof showed that Bourne controlled the movements of the machine and the acts of the driver." Neither is applicable here, because of the relationship of public carrier and passenger. If at all applicable, it is noted that the court gave a correct instruction based on this phase of contributory negligence:

> "It is universally conceded that the negligence of the driver of an automobile for hire is not attributable to a passenger having no control over the driver other than to indicate the route to be followed or the place to which the car is to be driven. Even the courts which have adopted the minority view, imputing the negligence of the driver of an automobile to passengers in the automobile, have refused to extend this rule to private carriers for hire."

5 Am. Jur. p. 783, sec. 495; Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 29 L. Ed. 652.

It is particularly urged that Hilton was guilty of contributory negligence because he failed to leave the car when it stopped just prior to the accident; it being insisted that the court should have instructed the jury in its favor in the Hilton case, or have given the definite contributory negligence instruction.

Hilton testified that he was "kinder scared at the speed of the car," and asked Chester to slow down, and, as recited above, as to what occurred when stopping to render aid to the motorcyclists. Hilton, being asked why he did not then get out, replied that it was the only way he had to get back home; that he had paid his money for the trip and was willing to go on. It is noted that this conversation between the passengers (and Chester) on the one hand, and the cycle riders on the other, took place at the time Chester gave assurance that he would take care of his passengers. Hilton and his fellow passengers, having paid for the service, had the right to rely upon this assurance.

We may say that after a considerable research we have been unable to find any authority (and none are cited) which would justify us in holding as is contended for here. The law will not require a passenger in a vehicle, which he has hired to perform a transportation service, to leave the vehicle because the driver had operated his car at a little greater rate of speed than one ordinarily drives.

In all the cases we have observed, where a passenger was injured by the negligence of the owner or driver, and was held to have contributed to the negligence because of failure to remonstrate or to leave the vehicle if opportunity was afforded, the passenger was a guest. The authorities are of one accord in laying down the rule that a carrier for hire, such as Adams was here, is under duty to exercise the highest degree of care for the safety of passengers. Huddy on Automobiles, 5, 6, 161; Hinds v. Steere, 209 Mass. 442, 95 N. E. 844, 35 L. R. A. (N. S.) 658. We have found cases holding that while a passenger is not responsible for the negligence of the driver, he may yet be held responsible and not entitled to recover, if his negligence directly contributed to the happening of the accident, or concurred with that of the driver in such a way as to be the approximate cause; but as the court said in McKellar v. Yellow Cab Co., 148 Minn. 247, 181 N. W. 348, 350:

> "We have found none, which holds that a carrier is absolved from liability * * * by the fact that the passenger failed to protest against the negligent manner in which the carrier operated its conveyance. * * * The carrier cannot transfer to its passenger responsibility for its own neglect where the passenger has done nothing tending to bring about the accident."

Isbell v. Pittsfield Electric Ry. Co., 196 Mass. 296, 82 N. E. 3; Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 29 L. Ed. 652; Harmon v. Barber (C. C. A.) 247 F. 1.

In McDonald v. Mesaba Ry. Co., 137 Minn. 275, 163 N. W. 298, it was held that the fact that a passenger riding in an autobus took no precautions for her safety, as against the operator, would not sustain a finding of contributory negligence, nor justify the submission of the question to a jury. In the absence of authority which holds contrary to the views expressed above, we conclude that the court did not err in failing to give the rejected contributory negligence instruction offered by defendant in each case. We are of the opinion that the instructions given by the court fully presented to the jury the law of the case, as justified by the facts.

The final contention of appellant is that the verdict of the jury, in each case, was flagrantly against the evi-

dence. There can be no doubt but that there was sufficient evidence to carry the cases to the jury. The fact that it conflicts on material questions, or that this court would have believed one set of witnesses as against the other, or that the verdict may be against the weight of evidence, gives us no ground to set the verdict aside; nothing short of its being palpably against the evidence authorizes this court to reverse on the ground suggested. Interstate Coal Co. v. Shelton's Adm'r, 160 Ky. 40, 169 S. W. 546; Denker Transfer Co. v. Pugh, 162 Ky. 818, 173 S. W. 139.

Judgment affirmed.