Manuel Nieves Bonet, Ángel Torres y Mercedes Pagán, demandantes y apelantes, *v.* American Railroad Co. of Porto Rico, demandada y apelada.

Núm. 9546.—*Sometido:* Enero 16, 1948. *Resuelto:* Marzo 19, 1948.

*Enrique Báez García,* abogado de los apelantes; *Mariano Acosta Velarde, Daniel Pellón Lafuente* y *Fernando Fornaris, Jr.,* abogados de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Tres acciones en reclamación de daños y perjuicios fueron iniciadas en la Corte de Distrito de Mayagüez por Manuel Nieves Bonet, Angel Torres y Mercedes Pagán, contra

The American Railroad Company of Porto Rico, como consecuencia de un accidente ocurrido el 2 de enero de 1944. Por estipulación de las partes los tres casos fueron vistos conjuntamente ante la corte inferior, quien los resolvió, desestimando las demandas, con una sola opinión, aunque dictó tres sentencias separadas. Si bien los demandantes apelaron en cada caso, los recursos fueron consolidados, utilizándose una sola transcripción de la evidencia y, en la misma forma que la corte inferior, los resolveremos con una sola opinión.

■ El único error señalado por los apelantes es al efecto de que la corte a quo erró al declarar que los demandantes fueron culpables de negligencia contributoria.

Como este señalamiento envuelve un ataque a la apreciación que de la prueba hizo la corte sentenciadora, consideramos conveniente transcribir las conclusiones a que llegó y según las hizo constar en su opinión en esta forma:

"Que en la tarde del día 2 de enero de 1944 los demandantes Manuel Nieves Bonet, Angel Torres y Mercedes Pagán estuvieron desde muy temprano en la cantina del 'Boquerón Beach Club', sentados alrededor de una mesa en que tenían botellas de ron y coca cola; que al anochecer y a eso de las 6:40 de la tarde regresaban de Boquerón a Mayagüez en el vehículo de motor marca Chevrolet C-2648, propiedad de Manuel Nieves Bonet, guiado y conducido por su dueño, ocupando los otros dos demandantes Angel Torres y Mercedes Pagán el asiento delantero; que la carretera número 18 es cruzada por la vía férrea formando un paso a nivel sin que existiera el día del accidente guardabarreras, barreras ni cadenas; que en dicho cruce The American Railroad Company of Porto Rico nunca había operado barreras o guardabarreras; que en los instantes en que el vehículo de motor tripulado por los demandantes se acercaba al paso a nivel formado por el cruce de vía férrea con la carretera insular número 18, se aproximaba a dicho cruce el tren número 28 arrastrado por la locomotora número 37 operada por empleados de la demandada que marchaba de Lajas hacia Boquerón; que los empleados que manipulaban la locomotora número 37 del tren número 28 hicieron

uso del silbato inmediatamente antes de llegar al cruce, venían tocando la campana de la locomotora y conducían dicho tren a muy poca velocidad; que el farol delantero de la locomotora número 37 estaba encendido, así como estaban encendidas también todas las luces del tren número 28 que lo era de pasajeros; que dicho tren venía con precaución por tener señalado un cruce en la estación de Boquerón así como por tener que detenerse en dicha estación la cual, según la evidencia, dista del cruce unos doscientos (200) metros; que el vehículo de motor llevaba sus luces delanteras encendidas y los frenos de dicho vehículo de motor funcionaban bien; que tanto Manuel Nieves Bonet como los otros demandantes que ocupaban su automóvil conocían el cruce y sabían y les constaba que en dicho paso a nivel la demandada no tenía guardabarreras ni operaba barreras o cadenas; que en los instantes en que se acercaba el vehículo de motor al cruce Juan Acosta, capataz del Departamento de Vía y Obras de la demandada, quien residía en una casa cerca del paso a nivel, hizo señales al vehículo de motor para que éste se detuviese antes de llegar a la vía férrea; que a pesar de las señales hechas por el capataz Juan Acosta y no obstante el toque de pito y campana, el automóvil Chevrolet no se detuvo en ningún momento antes de cruzar la vía férrea, continuando su marcha, siendo alcanzado por el tren.

"La Corte encuentra probado que los tripulantes del vehículo de motor se limitaron a mirar hacia la izquierda, o sea, hacia un tren que estaba estacionado frente a la estación de Boquerón, no habiendo mirado hacia la derecha, o sea en la dirección en que se aproximaba el tren con el cual ocurrió la colisión, ni habiendo detenido la marcha de dicho vehículo inmediatamente antes de cruzar la vía férrea, ni reducido la velocidad que llevaba.

"Por la evidencia testifical y fotografía la Corte es de opinión que el tren con el cual ocurrió la colisión era visible para los demandantes desde distancia razonable antes del cruce; asimismo la Corte opina que de haber los demandantes observado hubieran visto el tren y de haber tomado las precauciones razonables de todo conductor de vehículo y persona que intenta cruzar una vía férrea, hubieran evitado el accidente. Las declaraciones de los demandantes en cuanto a haber sentido el toque de pito y de campana y que no detuvieron el vehículo que ocupaban ni miraron hacia la derecha por creer que el toque de pito y campana, así como las luces que proyectaban hacia el paso a nivel, procedían de un tren que estaba detenido en la es-

tación Boquerón, no los eximía de la obligación de mirar a ambos lados inmediatamente antes de cruzar la vía férrea así como de detener su vehículo antes de intentar el cruce. (Citas)

"Resultando de toda la evidencia que los demandantes tenían conocimiento de que la demandada no operaba barreras ni tenía guardabarreras en el cruce del accidente; y apareciendo de las fotografías y evidencia testifical que los ocupantes del vehículo pudieron haber visto el tren y evitar el accidente de haber usado diligencia razonable, la Corte es de opinión que la causa próxima e inmediata del accidente se debió a la conducta de los propios demandantes en la forma y manera en que intentaron cruzar la vía férrea. (Citas)

"En el sitio del accidente existían letreros a ambos lados de la vía y a distancia razonable que dicen 'ojo al tren', 'Railroad Crossing', 'Párese, Mire, Oiga', 'Stop, Look, Listen'. Los demandantes declararon que ellos conocían el sitio del accidente; que con frecuencia habían pasado por él; que tenían conocimiento de que la demandada no operaba barreras en dicho sitio y que les constaba que se acercaban a una vía férrea, y a pesar de ello ni detuvieron su vehículo ni miraron a ambos lados de la vía inmediatamente antes de cruzar . . . . ''

Hemos leído detenidamente la extensa transcripción de la evidencia en estos casos y somos de opinión que la corte inferior no cometió el error imputado. La prueba no contradicha demostró que si bien la compañía demandada no tenía barreras, cadenas o guardabarreras en el paso a nivel donde ocurrió el accidente, lo cual le constaba a los demandantes, fué la acción del demandante, Manuel Nieves Bonet, que guiaba la guagua, de no detener su vehículo o acortar su velocidad al llegar a dicho paso a nivel y continuar su marcha a través de las vías del tren, a pesar de venir éste con sus luces encendidas y tocando campana y pito, la causa próxima del accidente.

Arguyen los apelantes que, de acuerdo con lo resuelto en el caso de *Cook* v. *Atlantic Coast Line R. Co.*, 196 S. C. 230, 13 S. E.2d 1 (South Carolina, 1941), " . . . cuando existe, como en Puerto Rico, un estatuto que impone el establecimiento de barreras en los pasos a nivel (letra (*q*),

artículo 3 de la Ley núm. 70 de 6 de diciembre de 1917 (¹) la doctrina de negligencia contributoria debe ser desechada, si la falta de cumplimiento de la ley por la demandada es la causa del accidente a menos que, en adición a una nueva falta de cuidado ... el accidente se haya debido a la negligencia crasa o a algún acto ilegal del perjudicado.''

No estamos de acuerdo. El caso de *Cook v. Atlantic Coast Line R. Co.*, supra, se resolvió a base de un estatuto a cuyos términos específicos se refirió la Corte en esta forma:

''Bajo los términos específicos del estatuto sobre señales (signal statute), la defensa del derecho común sobre negligencia contribuyente está eliminada de nuestra consideración. El lenguaje del estatuto (Sección 8377, Código 1932) es que, si el no haber dado las señales especificadas contribuyó al daño, la responsabilidad por todos los perjuicios causados por la colisión se impone a la compañía de ferrocarril, a menos que, en adición a una mera falta de cuidado ordinario, se demuestre que negligencia crasa o voluntaria o un acto ilegal del perjudicado contribuyó al daño.''

Si comparamos este estatuto de South Carolina con el nuestro, artículo 3(q), supra, veremos cuán distintos son en su redacción y alcance. Mientras el primero elimina la negligencia contributoria corriente del perjudicado y sólo lo hace responsable cuando haya incurrido en negligencia crasa o en un acto ilegal, el nuestro sólo impone un deber a las

---

(¹) El artículo 3, letra (q) de la Ley 70 de 1917, o sea la ''Ley de Servicio Público'', dispone: ''(q) Aparatos de seguridad en cruces, etc.—Si se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces públicos que la Comisión designare y, con sujeción a las reglas, reglamentos y órdenes de la Comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ella; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes los que reducirán la velocidad al mínimum en los cruces de calles; y deberá usar, después de la puesta de sol, las luces que sean necesarias y que la Comisión determine.''

compañías de ferrocarriles y silencia en absoluto el efecto, en cuanto a responsabilidad, que la participación negligente en cualquier accidente pueda haber tenido la persona perjudicada.

La doctrina sobre negligencia contributoria del perjudicado no ha quedado eliminada de consideración por el hecho de que la compañía demandada a su vez incurriera en negligencia al no cumplir con la Ley núm. 70 de 1917, instalando barreras o cadenas en el paso a nivel. Así lo hemos resuelto, entre otros, en los casos de *Domínguez* v. *Porto Rico Ry., L. & P. Co.,* 19 D.P.R. 1090; *Rosado* v. *Am. R. R. Co. of P. R.,* 38 D.P.R. 489 y *García* v. *Am. R. R. Co. of P. R.,* 45 D.P.R. 762. En este último caso a pesar de haber resuelto que la compañía demandada fué negligente al dejar de cumplir con los requisitos de seguridad y protección exigidos por la Ley núm. 70 de 1917, resolvimos a la pág. 772, que "De los hechos surge, a nuestro juicio, *como una cuestión de derecho,* la negligencia contribuyente de este demandante. Sus propias manifestaciones demuestran que conocía el cruce y sabía que no había allí barreras ni cadenas. Se ha demostrado que la vía estaba obstruída y se ha declarado por el ingeniero Totti, sin que su testimonio haya sido contradicho, que podía verse a tres metros de la misma. Las circunstancias que concurren en este caso demuestran, en nuestro sentir, *que debió ejercitarse por el conductor del vehículo un cuidado especial al aproximarse al cruce.* No parece, sin embargo, que el conductor del camión ejercitase ninguna otra precaución que la de caminar a una velocidad de seis millas por hora, sin que aparezca que mirase a un lado y otro de la vía y que tratase de mirar y escuchar." (Bastardillas nuestras.)

Y más adelante: "No compartimos el criterio de la corte sentenciadora en cuanto a la negligencia exclusiva de la demandada. Opinamos que la conducta de Francisco Olmeda, *dejando de adoptar precauciones aconsejadas por la pruden-*

*cia, constituyó un factor sustancial y jugó un papel importante en la producción del accidente."* (Bastardillas nuestras.)

Los hechos en el caso de *Cook* v. *Atlantic Coast Line R. Co.*, supra, y otros similares citados por los apelantes, son distinguibles, en cuanto a la forma en que ocurrió el accidente, de los hechos del caso de autos. En el de *Cook*, por ejemplo, la conductora del automóvil se paró antes de llegar a un paso a nivel mientras pasaba un tren que caminaba en dirección sur haciendo ruido y dejando polvo y humo en el ambiente, y que mientras pasaba dicho tren se acercaba al paso a nivel otro tren que caminaba en dirección norte, sin tocar señal de aviso alguno, y chocó con el automóvil que ya había empezado a cruzar el paso a nivel. Se probó en dicho caso que debido tanto al humo y polvo que dejó el primer tren al pasar como a otras obstrucciones que había cerca del paso a nivel, a la conductora del automóvil le fué imposible ver el segundo tren que se acercaba. Bajo estas circunstancias y de acuerdo con el estatuto especial a que nos hemos referido anteriormente, se resolvió que el demandante no incurrió en negligencia crasa o voluntaria, y que el accidente se debió a la negligencia de la demandada al no haber dado las señales o avisos requeridos por el estatuto.

La situación de hechos en el caso que resolvemos es distinta. Aquí el conductor del truck en ningún momento detuvo su vehículo al llegar al paso a nivel y se limitó a estar pendiente de un tren que según él estaba haciendo maniobras en un desvío en la estación de Boquerón, a doscientos metros del paso a nivel, sin prestar atención a las señales de avisos que le daba el tren que venía por la vía general, a velocidad moderada, tocando el pito y la campana, y con sus luces encendidas. De acuerdo con la prueba testifical creída por la corte, y las fotografías admitidas en evidencia, si el conductor del truck se hubiera parado al llegar al paso a

nivel y hubiera mirado hacia su derecha, hubiera podido ver el tren antes de que éste cruzara dicho paso. El no haber oído los avisos que daba con el pito y la campana quizás podría explicarse por el hecho de estar la cabina del truck cerrada con motivo de la lluvia, y debido al ruido del propio truck en movimiento, pero de estos hechos no puede hacerse responsable a la demandada y por el contrario debieron ser un motivo adicional para detener el vehículo. Es más, si como declaró Nieves Bonet, él creyó que el tren que estaba maniobrando en la estación podía dirigirse hacia el paso a nivel, con mayor razón debió detener su vehículo y cerciorarse de la verdadera situación. Somos de opinión que no puede atribuirse negligencia a la compañía demandada por el hecho de que dicho tren estuviera realizando maniobras en la estación, en un desvío a doscientos metros de distancia, en los momentos en que por la vía general se acercaba al paso a nivel otro tren dando aviso de su aproximación. Que el conductor del vehículo fué negligente lo demuestra, además, el hecho de que no vió o no hizo caso de las señales que le hacía el capataz Juan Acosta, antes de llegar al paso a nivel para que se detuviera.

No erró, a nuestro juicio, la corte inferior al resolver que el accidente se debió a la negligencia contributoria del conductor del truck y, en su consecuencia, *se confirman las sentencias apeladas.*